THE STATE v. ARTHUR BANTON, Appellant.—111 S. W. (2d) 516.

Division Two, December 17, 1937.

46

*L. A. Warden* and *Agnes Mae Wilson* for appellant.

*Roy McKittrick,* Attorney-General, and *William Orr Sawyers* for respondent.

LEEDY, P. J.—Appellant was charged by information in the Circuit Court of Grundy County with murder in the first degree, in having shot and killed his wife, Mattie. Upon a trial in the Mercer Circuit Court, to which the venue was awarded on appellant's application for a change, he was convicted, and sentenced to life imprisonment in the penitentiary, and he appeals.

Appellant is a negro, and at the time of the alleged offense, he and his wife were, respectively, thirty-two and thirty-five years of age. They lived at Trenton, where he had been employed some years as chauffeur and houseboy, and she as a domestic. One child had been born to them before their marriage, and another thereafter. Difficulties had arisen between them and Mattie's stepmother, in whose home they formerly lived, and on Sunday, May 5, 1935, the date in question, appellant and his wife were living at the home of Mollie Redmond. There was evidence to the effect that on the afternoon of the day just mentioned, appellant had been drinking. He went to the Redmond home where he found Mattie and other women engaged in writing chain letters, to which he objected. He remonstrated with his wife, and accused her of forgery, in that she was improperly placing the names on the lists so as to make it appear they were entitled to receive returns in money from the recipients of such letters. He grabbed some of the letters, and destroyed them. An encounter ensued in which appellant struck his wife, and perhaps knocked her down, and she and the other women ran from the house when he produced a revolver from a suit case, and threatened to kill Mattie. Appellant then took his suit case and said he was leaving. He soon reappeared and appellant and Mattie went into the kitchen. Mollie Redmond, Mattie's aunt, was in the dining room. The door into the kitchen was closed. Soon two shots were heard and appellant came out and surrendered himself. There were no other eyewitnesses. There was evidence that appellant had threatened to kill his wife on several recent occasions. His defense was that the shooting was entirely accidental; that when he and his wife were in the kitchen, they were "making up," and he was cutting a piece of pie, when she saw he had a revolver in his pocket, and reached for it, and in the scuffle which followed, it was accidentally discharged.

Having reached the conclusion that the judgment must be reversed and the cause remanded because of what we deem to be prejudicial error which occurred on the *voir dire* examination of the panel of jurors, the foregoing outline of the facts will suffice. Accordingly our discussion will be limited to the incident referred to, and to a disposition of the question of jurisdiction, the other alleged errors being not likely to recur on another trial.

I. It is insisted that the judgment must be reversed outright and the defendant discharged because the circuit court was without

jurisdiction to hear the case. This supposed want of jurisdiction is founded upon the claim that appellant was not accorded a "legal preliminary examination." This assertion was presented in a variety of ways—by plea in abatement, by motion to quash the information, by motion to suppress evidence, and otherwise. It will be unnecessary to notice all of the many grounds thereof. Chief reliance seems to be placed in the proposition that on the hearings of those pleas, it was shown that at the coroner's inquest the accused was compelled to testify against himself, which, coupled with the fact that the verdict of the coroner's jury was thereafter introduced in evidence at the preliminary examination, operated to destroy the jurisdiction of the circuit court. We need not concern ourselves with the effect of a violation of defendant's constitutional right not to be compelled to testify against himself (Sec. 23, Art. II, Const. of Mo.), because the evidence wholly fails to sustain any such charge. The same is true as to the claim that at and before the preliminary examination he was not permitted to advise with counsel or send for witnesses, nor consult his family or friends. There is nothing in the proposition that the court had no jurisdiction because the transcript of the testimony of the witnesses at the preliminary did not accompany the warrant of commitment, and was not delivered therewith to the jailer.

The two sections of the statutes dealing with the matter of preserving and certifying the evidence in homicide cases are Sections 3480 and 3489, Revised Statutes 1929 (Secs. 3480, 3489, Mo. Stat. Ann., pp. 3115, 3118). They provide, respectively, as follows. "In all cases of homicide, but in no other, the evidence given by the several witnesses shall be reduced to writing by the magistrate, or under his direction, and shall be signed by the witnesses respectively." "All examinations and recognizances taken in pursuance of the provisions of this article shall be certified by the magistrate taking the same, and delivered to the clerk of the court in which the offense is cognizable, on or before the first day of the next term thereof, *except that where the prisoner is committed to jail, the examination of himself and of the witnesses for or against him, duly certified, shall accompany the warrant of commitment, and be delivered therewith to the jailer.*" (Italics ours.)

It is the italicized portion above which is here invoked. But one of the main difficulties with appellant's position is that it has been expressly held that the requirements of these sections are not jurisdictional. [State v. Smith (Mo.), 228 S. W. 1057; State v. McDaniel, 336 Mo. 656, 80 S. W. (2d) 185.] In the Smith case the examination was neither signed by the witnesses nor certified by the justice, and a copy thereof did not accompany the commitment. It was there pointed out that, "the purpose of the statute is to secure to a defend-

ant a fair preliminary examination and to preserve the evidence taken." A stipulation to the effect that the testimony might be taken by the stenographer and a copy thereof delivered to each party was held to be a waiver of the requirements of the statute with respect to certification and return of the examination.

The evidence in this case shows that the preliminary was held May 10, 1935; that the testimony of the witnesses thereat was reduced to writing, and thereafter subscribed and sworn to by them, and on May 29, filed in the office of the circuit clerk. It was stipulated that a copy thereof was furnished to counsel for appellant on the day of their appointment as such by the court, which was June 1, the first day of the next ensuing term of the Grundy Circuit Court. A plea in abatement was filed on June 8, which made no complaint of, or reference to the omission of the examination to accompany the warrant of commitment, and being delivered therewith to the jailer. After his plea was overruled, appellant later, on June 24, filed another such plea which embraced, for the first time, the irregularity now relied on.

In State v. Ancell, 333 Mo. 26, 62 S. W. (2d) 443, the testimony of the witnesses was not signed before the examining magistrate, but before his successor in office. This and the further fact that the justice's transcript filed in the circuit court was not a copy or transcript of his docket entry was held not to invalidate the preliminary examination. It was there said, "In the instant case it is not contended that defendant was not in fact accorded a preliminary examination. His own proof shows that he was and that the magistrate in due time certified the same to the circuit court. There is no contention nor any evidence tending to show that defendant was in any way prejudiced by the failure of the examining magistrate to enter the proceedings in his docket. To hold in such circumstances that the prosecuting attorney was without authority to file and the circuit court to proceed upon an information would be to make such authority and jurisdiction dependent, not upon the fact that the accused had been accorded a proper preliminary examination but upon whether or not the examining magistrate had made sufficient docket entries or record thereof. We think that neither the statute nor the reason of the thing requires that we so hold.

"We have said, in substance, that the purpose of preliminary examinations is to prevent suspected persons from escaping, to secure their attendance and that of witnesses at the trial, as well as to safeguard them from groundless and vindictive prosecutions. [State v. Tunnell (Mo.), 296 S. W. 423, 426; State v. Jeffries, supra; State v. Flannery, supra; State v. Langford, 293 Mo. 436, 240 S. W. 167.] These purposes are accomplished when the accused has been accorded a preliminary examination, whether the examining magistrate makes

a record of it in his docket or not. Regardless of whether or not the docket entry written by the justice after his term of office had expired can be considered, we are of the opinion that on the facts shown the justice's failure to make entries of the proceedings had before him did not invalidate the examination.''

The Smith and Ancell cases were followed in the McDaniel case where a similar attack, grounded on the same statute, was ruled adversely to appellant. In affirming the judgment, the court said: ''There is no contention in the instant case that the testimony of the witness Warren at the preliminary hearing was not correctly reported in the transcript returned by the magistrate. Appellant was present at the hearing and heard the testimony given. His counsel used the transcript for the purpose of cross-examination in the trial in the circuit court. Apparently the examination of the witness was taken down in shorthand and transcribed. At least such parts thereof as were read into the circuit court record by appellant's counsel were in the form of questions and answers. In harmony with the Smith and Ancell cases, supra, we are constrained to hold that the conviction of appellant should not be overturned on the unsubstantial grounds presented in this assignment of error, and that the circuit court did not err in overruling the appellant's motion to quash the amended information.'' And so it is in the case at bar. The transcript was used by appellant's counsel for the purpose of examination and cross-examination at the trial in the circuit court. No contention was made then or now that the testimony was not correctly transcribed, or signed, or that appellant had been prejudiced in preparing his defense because he did not have a copy of the transcript a sufficient length of time before the case was set for trial to enable him to examine and study it before that date. The purpose of the statute having been served, and the appellant being in no wise prejudiced by the failure to comply strictly with the letter thereof, upon the authority of the Smith, Ancell and McDaniel cases, we rule the point against the appellant.

II. As stated above, reversible error was committed at the outset of the trial, in that the prosecuting attorney was permitted, over the objection and exception of appellant, to tell the entire panel of jurors, on their *voir dire* examination, that ''this case was filed in Grundy County and was brought here on change of venue by the defendant.'' An objection was interposed on the ground such statement was prejudicial. The ruling of the court was: ''The State couldn't take a change of venue. Objection overruled; go ahead.''

The only case cited by the State in support of its position that the foregoing does not constitute reversible error is State v. Reed, 329 Mo. 203, 44 S. W. (2d) 31. That case is wholly without applica-

tion. An examination of it discloses nothing even remotely tending to suggest that any such question was under consideration. Indeed, a change of venue was not even involved, and there is no hint in the record that the prosecutor had made improper remarks. It merely held that on the record before the court, there was nothing to sustain the assignment that the verdict resulted from passion and prejudice. The State argues that no prejudice resulted from the remark of the prosecutor and the language of the court in ruling appellant's objection, and for that reason we are not at liberty to disturb the judgment. To this we cannot assent.

The case of State v. Crow, 337 Mo. 397, 84 S. W. (2d) 926, decided shortly before this case was tried, condemned a like statement as improper and unnecessary. It was there said: "Error was assigned to the action of the trial court in permitting the prosecuting attorney to state to the jury that the case had been transferred to Gasconade County on the application of appellant for a change of venue. Such a statement was improper and entirely unnecessary. A defendant feeling that he cannot have a fair trial in the county where the charge is filed has a right, under the law, to apply for a change of venue. The fact that he does so should not militate against him in the new forum, and, therefore, should not be referred to in any manner during the trial. When appellant's attorney objected to the statement the trial court ruled that it was improper. No request was made for a reprimand. The record does not disclose an adverse ruling on the objection. Appellant is, therefore, in no position to complain." That there is nothing new in such holding is attested by the early case of State v. Phillips & Ross, 24 Mo. 475, decided in 1857, wherein it was said: "We see no warrant in the law for reading, against the protest of the accused, the proceedings on the application for the change of venue and the order thereupon. Whether there was a change of venue or not, or whether it was properly awarded or not, was a question with which the jury had nothing to do; and it is surprising that, against the objection of the accused, the attorney for the State should have done such a thing. *What motive could there be to such an act but the hope of reproducing that very state of things from which the law in its mercy had rescued the defendants? It was making the law guilty of the absurdity of awarding a change of venue, and at the same time depriving the party of the advantage expected from it—a fair and impartial trial.*" (Italics ours.)

In Neff v. City of Cameron, 213 Mo. 350, 111 S. W. 1139, 18 L. R. A. (N. S.) 320, 127 Am. St. Rep. 606, the question was under consideration, and in reversing the judgment for plaintiff in a personal injury case the court had this to say of argument of plaintiff's coun-

sel to the effect that plaintiff had not taken the case to Andrew County for trial: "But, on broader grounds, we do not choose to shut our eyes to the purpose and danger of that line of argument. It could have no result except to prejudice the jury and the court should have instantly stamped the seal of its disapproval upon it. . . . In our opinion, the interest of exalted and refined justice will be subserved by reversing and remanding this case for a new trial."

In State v. Wright, 161 Mo. App. 597, it appears that an affidavit of prejudice had been filed against the regular judge, who, in calling in another judge, and in the presence of the jurors "delivered a long and circumstantial address in open court on the subject of the prevalence of the practice of attorneys in criminal cases to use the law relating to change of venue in an improper and immoral manner." In reversing and remanding the case on that ground alone, the court said: "The criticism of the regular judge was truthful; but it should not have been delivered in the presence of jurors who were to try defendant. . . . It will not do to say the jury were uninfluenced by what they heard because they thought they were free of prejudice and could give defendant a fair trial. The question is whether the remarks of the court were such as to prejudice defendant in the minds of ordinary men in the situation of the jury, not whether or not this particular group of men believed they were not influenced against the object of the criticism. Men often are deluded into believing they are in a fair frame of mind when they are blinded by prejudice." [See, also, State v. Doerries, 168 Mo. App. 324, 153 S. W. 1062; State v. Giudice (Iowa), 153 N. W. 336.]

As pointed out in the statement of facts, there was no eyewitness to the homicide, other than appellant. It was his contention throughout that the shooting was entirely accidental, and we are not willing to say, at this distance, that the verdict was uninfluenced by the improper remark of the prosecutor, and the ruling of the court, which was, in substance, not only that the prosecutor was right in so informing the jury, but that the case could have reached the county where it was tried in no other way than on defendant's application. Error should not be declared harmless unless it is so without question. [State v. Richards, 334 Mo. 485, 67 S. W. (2d) 58.]

For the reason noted, the judgment is reversed, and the cause remanded. All concur.