**ROSENBERG et al. v. SEMERIA et al.**
**SAME v. LORENZETTI.**
**SAME v. HARDY.**
**Nos. 10282–10284.**

Circuit Court of Appeals, Ninth Circuit.
Aug. 17, 1943.
Writ of Certiorari Denied Oct. 18, 1943.
See 64 S.Ct. 82, 88 L.Ed. ——.

---

[1] Report No. 1290, October 21, 1943.

743

Keyes & Erskine and Morse Erskine, all of San Francisco, Cal., for appellants.

Charles R. Garry, of San Francisco, Cal., for appellees Semeria, Fattor, Osterlye, Row, Cody, McBean, Mills and Pickard.

Picard & McCarty and Francis McCarty, all of San Francisco, Cal., for appellees Lorenzetti and Hardy.

Irving J. Levy, Acting Sol., and Bessie Margolin, Acting Sol., Wage and Hour Division, both of Washington, D. C., Dorothy M. Williams, Regional Atty., Wage and Hour Division, of San Francisco, Cal., Morton Liftin, of Washington, D. C., and George L. Clarke, of Baltimore, Md., for Administrator of Wage and Hour Division, United States Department of Labor, as amicus curiae.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Appellants in these cases are a co-partnership maintaining an establishment for the performance of janitorial services for owners and lessees of apartment houses, office buildings, and the like. The services are rendered on a contractual basis. Among those having contracts with appellants are Wells-Fargo Bank & Union Trust Company, the American Trust Company and the Anglo California National Bank of San Francisco. These banks are substantially engaged in interstate commerce,[1] although the greater part of their banking business is intrastate in character.

Appellees are laborers employed and paid by appellants to do the janitorial work in these banks pursuant to the aforementioned service contracts. They sweep, mop and dust, empty wastepaper baskets, polish cuspidors, clean toilets and wash down the walls thereof, vacuum rugs, empty ink wells, sweep the sidewalks, etc. A few are employed in janitorial work in and about a cafeteria operated by one of the banks exclusively for the use and convenience of its own employees. Claiming to be entitled to the benefits of §§ 6 and 7 of the Fair Labor Standards Act,[2] they sued appellants for overtime wages. The trial court granted judgments in their favor, being of opinion that they are engaged in commerce inasmuch as a substantial part of the activities of the banks in which they serve is interstate in character. Appellants concede that the banks are in commerce but deny that appellees are engaged in commerce. They contend further that theirs is a "service establishment" within the meaning of § 13(a) (2), 29 U.S.C.A. § 213(a) (2), and is therefore beyond the reach of the Act. In the view we take, it will not be necessary to consider the latter contention.

Since the submission of the cases, the Supreme Court has decided McLeod v. Threlkeld, 63 S.Ct. 1248, 1251, 87 L.Ed. ——. The employers there were a partnership with a contract to furnish meals to maintenance-of-way employees of an interstate carrier, the meals being cooked and served in a railroad car attached to a

[1] Cf. N.L.R.B. v. Bank of America, 9 Cir., 130 F.2d 624.

[2] 52 Stat. 1062, 1063, 29 U.S.C.A. §§ 206, 207.

"Sec. 6. (a) Every employer shall pay to each of his employees who is engaged in commerce or in the production of goods for commerce wages at the following rates—

\* \* \* \* \*

"Sec. 7. (a) No employer shall, except as otherwise provided in this section, employ any of his employees who is engaged in commerce or in the production of goods for commerce \* \* \*."

particular gang of workmen and set on the railroad track conveniently to the place of the gang's activities. The employee concerned worked for the partnership as a cook in this car. He was held not within the coverage of the Act, the court saying that "The test under this present act, to determine whether an employee is engaged in commerce, is not whether the employee's activities affect or indirectly relate to interstate commerce but whether they are actually in or so closely related to the movement of the commerce as to be a part of it." It was thought that employee activities outside of this movement, so far as they are covered by the wage-hour regulation, are governed by the phrase 'production of goods for commerce."

■ Here, as there, the employees concerned are not in any sense engaged in production nor are their activities integrated with the production of goods. Cf. Kirschbaum Co. v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. The sole argument made on their behalf is that they are "engaged in commerce." We are compelled to disagree. Their work appears to us even more remote from the movement or stream of commerce than was the work of the cook in McLeod v. Threlkeld, supra. The holding in that case is controlling.

The judgments are accordingly reversed.

DENMAN, Circuit Judge (dissenting).

There seems no difference between removing the discarded papers used in the interstate banking transactions, cleaning the ink wells after their use in writing and signing such documents, making habitable by janitorial services the premises necessarily required to perform such interstate transactions and the functions of the railway gang which cleans the passenger coaches carrying persons interstate. Both appear services necessary to the conduct of interstate business. In both cases they are engaged "in actual work upon the transportation [interstate] facilities" as that phrase is used in McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 1250, 87 L.Ed. ——, (June 7, 1943).

Merely cooking food for the men who maintain an interstate right of way seems a step substantially removed from cleaning the cars used in such transportation. Because an interstate bank's premises are immobile and the cars move is no ground of distinction. For an analogy to support the majority opinion the Supreme Court would have to hold that one employed in the cleaning of railway tools and tool houses, both facilities of the maintenance of way men, was not serving interstate commerce.

The question is whether the services are a direct aid to interstate commerce. Here it is not only such an aid but it is conceivable that a bank which had no janitorial service and permitted the litter of its transactions and its dust and dirt to accumulate would cease to function. I can see no difference between the "porters [who] keep the buildings clean and habitable" for the men and processes for the production of goods for commerce held within the Act in Kirschbaum Co. v. Walling, 316 U.S. 517, 519, 62 S.Ct. 1116, 1118, 86 L.Ed. 1638, and the janitors who keep the buildings clean and habitable for the men and processes in interstate banking. I do not believe that McLeod v. Threlkeld overruled, sub silentio Kirschbaum Co. v. Walling.

Appellants claim they are within the exception to the provisions of the Fair Labor Standards Act of its section 13(a) 2 which provides: "The provisions of sections 206 and 207 shall not apply with respect to * * * any employee engaged in any retail or service establishment the greater part of whose selling or servicing is in intrastate commerce."

It is contended this provision should be construed as applying to the independent contractors who furnish the employees to the banking establishments in which they work. They contend that since they also furnish janitors to be employed in other establishments where their employment is in intrastate commerce and the total of such employment is greater than that in interstate commerce they are a service establishment within the exception.

I do not so construe the phrase "employee engaged *in* any * * * service establishment". The words are "engaged *in*" and not "employed by". Here the independent contractors furnished their employees to be engaged in work "in" the banking establishments. It is the character of the employment in the establishment and not the relationship of employees to an independent contractor, which is the determining factor. The District Court properly so held in an excellently reasoned opinion with a comprehensive review of the authorities. Lorenzetti v. American Trust Co., 45 F.Supp. 128.

The question then remains whether a banking institution is a "service establishment" within the meaning of the Act. The record does not show in detail the interstate business of the banks, but we may assume that it is primarily borrowing the money of the lending public, often referred to as "depositors" rather than lenders, and lending the borrowed money to others. Such profit seeking borrowing and lending by a bank do not constitute it a service establishment within the meaning of the exception.

The above applies to all the janitors except Semeria. He was not employed entirely in the bank's premises used for banking purposes. A part of his time was spent in janitoring a cafeteria on a higher floor of the Wells Fargo bank, within the rule of McLeod v. Threlkeld, supra, (not decided when this case was tried below) too remote from interstate commerce to bring such services within the Act. The evidence does not show what portion of his services kept the premises "clean and habitable" for the bank's interstate business much less that it was sufficient to bring him within the overtime provisions of the Act. Since the burden of proof was on Semeria to show that he was entitled to such overtime payment, it was error to award him overtime damages.

The judgment should be affirmed as to all the janitors except Semeria. As to the judgment in Semeria's favor, it should be reversed.