Turner, J.
 

 Section 5611-2, General Code, provides in part as follows:
 

 “If upon hearing and consideration of such record and evidence the Supreme Court is of the opinion that the decision of the Board of Tax Appeals appealed from is reasonable and lawful it shall affirm the same, but if the Supreme Court is of the opinion that such decision of the Board of Tax Appeals is unreasonable or unlawful, it shall reverse and vacate same or it may modify same and enter final judgment in accordance with such modification.”
 

 As stated by the Board of Tax Appeals in its journal entry:
 

 “The sole question presented is whether or not the appellant was a dealer in intangibles.”.
 

 That portion of Section 5414-1, General Code, drawn in question, reads as follows:
 

 “The term ‘dealer in intangibles’ as used in this chapter includes every person who keeps an office or other place of business in this.state and engages at such office or other place in the business of * * * buying or selling bonds, stocks or other investment securities, whether on his own account, with a view to profit, or
 
 *66
 
 as agent or broker for others, with a view to profit or personal earnings. * * * Neither casual or isolated transactions of any of the kinds enumerated in this section, nor the mere investment of funds as personal accumulations or as business reserves or working capital shall constitute engaging in business within the meaning of this section * # *.”
 

 Many years ago Judge Hitchcock in the opinion of the court in the case of
 
 Lessee of McMillan
 
 v.
 
 Robbins,
 
 5 Ohio, 28, said:
 

 “I am aware that it is common to complain of tax laws, and there is. perhaps, no part of legislation, which it is more difficult to perform satisfactorily, or in such a manner as to do exact justice to all, than to frame a revenue system.”
 

 The problem has become more difficult as government has become more complicated and more expensive. However, there is one fundamental precept which still obtains in the interpretation of taxation statutes, to wit, that in case of doubt, such doubt is to be resolved in favor of the taxpayer. 2 Cooley Taxation (4 Ed.), 1113, Section 503; 51 American Jurisprudence, 366, Section 316.
 

 In 51 American Jurisprudence, 365, Section 315, it is said:
 

 ‘ ‘ In the application to the interpretation of tax statutes of the general principle that where there are two possible constructions of a statute, that one will be preferred which does not produce unfair, arbitrary, or oppressive results, it has been held that taxation is an intensely practical matter, and laws in respect of it should be construed and applied with a view of avoiding, so far as possible, unjust and oppressive consequences. In construing a taxing statute, that interpretation is to be adopted which lays the burden uniformly on all
 
 standing in the same degree
 
 with relation to
 
 *67
 
 the tax adopted, or, stating it somewhat differently, tax laws should be construed so as to make their application fair and to avoid arbitrary results.” (Italics ours.)
 

 It is said in 37 Ohio Jurisprudence, 722, Section 402:
 

 “A statute which is subject to the rule of strict construction is nevertheless entitled to a reasonable, sensible, and fair construction according to the sense in which the terms thereof were intended to be used. The rule does not require the courts to depart from the plain or usual meaning of the terms employed.”
 

 In 51 American Jurisprudence, 357, Section 303, it is said:
 

 “The prime requisites of any statute is certainty, and * * # this is especially true of a taxing statute.”
 

 In 51 American Jurisprudence, 361, Section 310, it is said:
 

 “The intention of the legislature with respect to tax statutes must, as in the case of statutes generally, be ascertained from the language of the act. As has been frequently pointed out, a tax cannot be imposed without clear and express language for that purpose.”
 

 In 38 Ohio Jurisprudence, 725, Section 15, it is said:
 

 “If there is any doubt as to the meaning of a tax statute, the construction must be strict, and the doubt must be resolved in favor of the citizen upon whom or property upon which the burden is sought to be imposed, and against the taxing power.”
 

 It is also said in 38 Ohio Jurisprudence, 726, Section 15:
 

 ‘ ‘ Furthermore, the general rule that a taxation statute will be strictly construed, that is, in favor of the taxpayer, does not apply where there are countervailing rules and to do so would effect a discrimination with resultant lack of uniformity of operation.”
 

 In 2 Cooley Taxation (4 Ed.), 1110, Section 502, it is said:
 

 
 *68
 
 “However, statutes relating to taxation are to be so construed as to carry into effect the obvious intent of the legislature, rather than to defeat that intent by a too strict adherence to the letter.”
 

 Keeping these precepts in mind, let us examine Section 5414-1, General Code, as applied to this case.* Does the applicant keep such an office or other place of business contemplated by the statute where he engages in the buying or selling of stocks, bonds, etc! Certainly, where a man’s principal business is the presidency of a manufacturing company and he has his stenographer or secretary keep a memorandum or books concerning the investments of himself and family and no one else and the record does not disclose the resorting to such office or place of business of members of the public for the purpose of buying or selling securities, it' cannot be said that he is maintaining such an office or place of business as is referred to in Section 5414-1, General Code,
 
 supra.
 

 What transactions are casual or isolated depend upon the facts of each case. Here the family had given options on the capital stock of the family enterprise. As that option was exercised, sales were made. Less than a half dozen sales and purchases were made in any one year except the investment of the sale price of the option stock in 1946 or 1947 by the Chicago bank. We are of the opinion that the quantity of sales is an item to be considered in determining whether the sales were casual or isolated transactions or the mere investment of personal accumulations which are exempted by Section 5414-1, General Code.
 

 The expert accountant testified that during the calendar year 1946 “there were three sales, two of which arose out of the sale of rights which were issued by certain industrial concerns and not through the sale of principal at all, but the sale of rights, rather than
 
 *69
 
 stock, and only one sale of a security which was held by the trust.”
 

 As to the year 1945, such accountant testified from 'his knowledge of the business affairs that there were not over four sales of securities in that year and that there were not over four or five purchases in that .year; that in 1946 there was a substantial number of purchases which arose out of the necessity of investing the $375,000 in cash which Mr. Stephens had testified he turned over to the First National Bank. Those purchases were not made by Mr. Stephens, but by the Eirst National Bank of Chicago.
 

 We are, therefore, of the opinion that appellant did not keep an office or place of business in this state where he engaged in the business of buying or selling-bonds, stocks or other investment securities, within the reasonable meaning of Section 5414-1, General Code. We are of the further opinion that according to the evidence in this case the sales and purchases made by appellant fall into the category of casual or isolated transactions.
 

 We are of the further opinion that the evidence discloses that the funds invested were personal accumulations and, therefore, exempt under Section 5414-1, Genera] Code.
 

 Being of the opinion that the decision of the Board of Tax Appeals appealed from is unreasonable and unlawful, the decision is hereby reversed and vacated.
 

 Decision reversed.
 

 Wetgandt, C. J., Matthias, Hart, Zimmerman, Stewart and Taet, JJ., concur.