Gibson, J.
It being conceded that appellant on December 31, 1957, was a dealer in intangibles as defined in Section 5725.01 (B), Revised Code, and therefore must pay the tax im *248 posed by Section 5725.13 et seq., Revised Code, the first issue for determination here is whether the provisions of the law with respect to the allocation of Ohio and out-of-Ohio capital are applicable.
The statutory provisions for the allocation of Ohio and out-of-Ohio capital for the purpose of the dealer-in-intangibles tax are found in Sections 5725.15 and 5725.14, Revised Code, which read in pertinent part:
Section 5725.15. “* * * If a dealer has separate offices, whether within this state only or within and without this state, the [tax] commissioner shall find the amount of capital employed in each office in this state, which shall bear the same ratio to the entire capital of such dealer, wherever employed, as the gross receipts of such office bears to the entire gross receipts of such dealer, wherever arising. * * *” (Emphasis supplied.)
Section 5725.14. ‘‘ * * * jf a dealer in intangibles maintains separate business offices, whether within this state only or within and without this state, said report [tax return] shall also show the gross receipts from business done at each such office during the year ending on the thirty-first day of December next preceding.
C i * * #
“As used in this section and Section 5725.15 of the Revised Code business is considered done at an office when it originates at such office, but the receipts from business originating at one office and consummated at another office shall be divided equitably between such offices.” (Emphasis supplied.)
Although the word “business” was not consistently used in these statutory provisions, it is clear that the General Assembly meant only that the separate offices maintained by a dealer must be business offices. See Stephens, Trustee, v. Glander, Tax Commr. (1949), 151 Ohio St., 62. It is to the real issue of whether the appellant maintained separate business offices within and without this state that we now turn our attention.
There is no dispute as to the basic facts regarding the relationship of the appellant to the eight franchised dealers of refrigeration equipment manufactured by Uniflow Manufacturing Company of Erie, Pennsylvania. The dispute arises over the *249 legal significance of the assignments and guarantees of such franchise dealers to the appellant and of the agreements between the franchise dealers and the appellant.
Appellant contends that the effect of these agreements was to make each franchise dealer its agent and thus to establish constructively eight separate business offices even though not in its own name. The facts, however, show the fallacy of appellant’s contention. The dealers here involved were sellers of refrigeration equipment not financing agents, the paper here involved was taken in the name of the dealer not appellant and was assigned by the dealer to the appellant with recourse to the dealer. The business of the dealer was the selling of refrigeration equipment not the procurement of loans for appellant. As an incident to the refrigeration business the dealer acquired certain paper which appellant discounted; in other words, appellant financed the sales, taking an assignment of the security title. Such conduct certainly did not create an agency relationship between the appellant and the dealers. The mere fact that a finance company has an agreement with a dealer that it will discount the dealer’s paper does not constitute the dealer the agent of the finance company. It also should be noted that appellant conceded in oral argument that if in an action on one of the conditional sales contracts against an ultimate purchaser the purchaser would raise a defense based upon conduct of the franchise dealer, the appellant would deny that the franchise dealer was its agent but would claim the status of a holder in due course. Just as a bank does not establish branch offices at each used-ear dealer’s premises because it discounts the commercial paper of such automobile dealer, so appellant did not establish separate business offices by virtue of the fact that it financed by discounting commercial paper or by “floor plans” the sales and purchases of refrigeration equipment by the franchised dealers of Uniflow.
Appellant contends that the state of Ohio by this statutory scheme has levied a tax on assets located out of the state and thus imposes an unjust burden upon interstate commerce and takes its property without due process of law in contravention of pertinent provisions of the Constitution of the United States. In this connection, the evidence shows that the assets of appel *250 lant were the paper it held, not the property to which it held security title. Appellant’s business was the making of loans, this was done in Ohio, that was where the capital was employed, and even though such loans were secured by property located in a foreign state this did not constitute the employment of capital in the foreign state.
In Certified Credit Corp. v. Bowers, Tax Commr., 174 Ohio St., 239, decided today, we had the situation where a dealer, who had separate business offices physically located in other states, was protesting the tax assessed, on the basis that the very allocation formula, which the appellant argues should be applied here, was unconstitutional on these same grounds. Since the sustaining of the allocation formula in that case necessarily holds that the maintenance of separate business offices is lawful, we find no merit in these constitutional arguments by appellant in this case.
Appellant argues also that the statutory construction which requires that a dealer in intangibles must maintain an office located physically in another state before the allocation of Ohio and out-of-Ohio capital formula is applicable deprives it of the equal protection of the laws as guaranteed by the Constitution of the United States. Appellant states that there are no general rules applicable in determining when a state statute transcends the boundaries of the equal protection clause, but cites Ohio Oil Co. v. Conway, Supervisor (1930), 281 U. S., 146, as authority for the proposition that with all the freedom of action enjoyed by the states in the exercise of their taxing power there is a point beyond which they can not go without violating the equal protection clause. Appellant then says, without analysis, that in assessing all of its capital as being employed in this state, the Tax Commissioner has gone beyond that point.
Mr. Chief Justice Hughes speaking for the court in Ohio Oil Co. v. Conway, supra, at page 159, made the following revelant comments:
“* * # The states have a wide discretion in the imposition of taxes. * * # The states, in the exercise of their taxing power, as with respect to the exertion of other powers, are subject to the requirements of the due process and the equal protection clauses of the Fourteenth Amendment, but that amendment im *251 poses no iron rule of equality, prohibiting the flexibility and variety that are appropriate to schemes of taxation. * * * In levying such taxes, the state is not required to resort to close distinctions or to maintain a precise, scientific uniformity with reference to composition, use or value. # * *”
Mr. Chief Justice Hughes, at page 160, also said:
“With all this freedom of action, there is a point beyond which the state can not go without violating the equal protection clause. The state may classify broadly the subjects of taxation, but in doing so it must proceed upon a rational basis. The state is not at liberty to resort to a classification that is palpably arbitrary. The rule is generally stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.’ Royster Guano Co. v. Virginia, 253 U. S. 412, 415; Louisville Gas Co. v. Coleman, 277 U. S. 32, 37; Air-Way Cory. v. Day, 266 U. S. 71, 85; Schlesinger v. Wisconsin, 270 U. S. 230, 240.”
Although the General Assembly might have used some basis other than the maintenance of separate business offices for determining whether the capital of a dealer in intangibles is employed in this state, we believe that the standard used has a fair and substantial relation to the object of the legislation and treats all persons similarly circumstanced alike.
From an examination of the entire record, we are unable to find that the decision of the Board of Tax Appeals is unreasonable or unlawful.

Decision affirmed.

Taft, C. J., Zimmerman, Matthias, O’Neill, Griffith and Herbert, JJ., concur.