**STATE of Missouri, Respondent,**

v.

**Wilson Herman JONES, Appellant.**

**No. 61391.**

Supreme Court of Missouri,
Division No. 3.

March 11, 1980.

Ronald E. Pedigo, Public Defender, 24th Judicial Circuit, Farmington, for appellant.

John Ashcroft, Atty. Gen., Jerry L. Short, Asst. Atty. Gen., Jefferson City, for respondent.

ALDEN A. STOCKARD, Commissioner.

Wilson Herman Jones, charged pursuant to the Second Offender Act (§ 556.280 RSMo 1969), was found guilty by a jury of murder in the second degree (§ 559.020 RSMo 1969) and sentenced by the court to life imprisonment. He has appealed from the ensuing judgment. We affirm.

A jury reasonably could find from the State's evidence that in the morning of October 1, 1977, appellant went to the home of Palmer Smith in Cape Girardeau, and the two then drove in Smith's truck to the home of Wilda Faye Leeder. From there the trio drove to a liquor store where they met Anna Belle Rhyne, who was Wilda Faye's half-sister, and her husband Herbert. This group of five then drove to the Rhyne home arriving about 2:00 o'clock in the afternoon. Thereafter, they drank a substantial quantity of beer, it being necessary on at least two occasions to replenish their supply. About 6:00 o'clock, just as it was getting dark, Smith attempted to get Wilda Faye to leave with him, but she refused, and the Rhynes told her she could stay there. About this time Smith left the house by the front door and went to his truck, but did not immediately drive away. The other four left the house by the back door and went to an outhouse. While Wilda Faye and Anna Belle were inside the outhouse, Herbert Rhyne brandished a pocket knife and there was an argument of some nature between Rhyne and appellant. The two men returned to the house. A few minutes later the two women returned, and they found Herbert lying on the floor with appellant standing about two feet away. No one else was in the room. Rhyne had received three severe stab wounds from which he later died. A few minutes later when Wilda Faye ran from the house to obtain help, appellant followed her and said: "Honey, I had to do it." He also said that Rhyne had "pulled a knife" on him. When the police arrived appellant was searched, but no knife was found on him or at the premises. One officer asked Rhyne who had stabbed him, and he replied, "a black man."

While appellant was in jail pending trial a disturbance occurred and one of the inmates referred to appellant as a "murderer," and appellant replied: "I've done it once, one more time won't hurt." On another occasion appellant told his cellmate about the altercation with Rhyne, and, as related by the cellmate, appellant said that he had stabbed Rhyne three times, indicating the places, and that he had gotten rid of the weapon. He further stated that he did not think he would be convicted because "they didn't have no eye witness or no murder weapon."

Appellant did not present any evidence.

■ Appellant's first point is that "the evidence presented was insufficient to sustain the State's burden of proof in a circumstantial case * * *." He relies on cases such as *State v. G'Sell*, 497 S.W.2d 882, 883 (Mo.App.1973), a wholly circumstantial evidence case in which it was stated that "To sustain a conviction on circumstantial evidence 'the facts and circumstances relied upon by the State to establish guilt must not only be consistent with each other, and with the hypothesis of defendant's guilt,

but they must also be inconsistent and irreconcilable with his innocence, and must point so clearly and satisfactorily to guilt as to exclude every reasonable hypothesis of innocence.'" But, this is not a case in which the evidence relied on by the State is wholly circumstantial. The admissions by appellant are direct evidence of his guilt. *State v. Stevens*, 467 S.W.2d 10, 25 (Mo. 1971). Therefore, as stated in *State v. Baldwin*, 571 S.W.2d 236, 240 (Mo. banc 1978), "Where the evidence * * * is partially direct and partially circumstantial, * * * the test as to submissibility is not that of a purely circumstantial evidence case."

In determining whether the evidence is sufficient to sustain the verdict we accept the State's evidence as true and give the State the benefit of all reasonable inferences deductible therefrom, disregarding all evidence and inferences to the contrary. *State v. Stapleton*, 518 S.W.2d 292, 296 (Mo. banc 1975).

To summarize the evidence, appellant and Rhyne engaged in a quarrel and then entered the house where at the time there was no one else present. In a matter of minutes thereafter Wilda Faye and Anna Belle entered the house and found Rhyne lying on the floor with stab wounds, and appellant was standing nearby. A few minutes later appellant told Wilda Faye that he "had to do it," and later while in jail he made admissions of guilt. These facts and circumstances clearly authorized the jury to conclude that appellant had inflicted the stab wounds that resulted in the death of Herbert Rhyne.

In his second point appellant contends the court erred in not suppressing "testimony of certain witnesses" who testified for the State at the preliminary hearing "because the witnesses had not signed the transcript of the preliminary hearing * * *." Appellant argues that "the failure of the State to properly preserve the testimony given at the preliminary hearing deprived [him] of his right to effective confrontation of the State's witnesses * *," and he was "forced to trial without knowing what the testimony of State Witnesses would be since the testimony recorded, not being properly preserved, is no better than any other hearsay statement." We consider this contention to border on the frivolous.

Well in advance of the trial appellant received the transcript of the preliminary hearing, and we note that it was not until the day of trial that this matter pertaining to the failure of the witnesses to sign was first presented to the court. Therefore, if any disadvantage to appellant resulted from such failure, and we are convinced that there was none, it could not have occurred except for the failure of appellant's counsel to seek timely remedial action. Also, there is nothing in the record before this court to show that the witnesses at the preliminary hearing did not sign as then required by Rule 23.12. In order for an appeal court to review an alleged error in the trial court, the appealing party must see to it that the record on appeal incorporates the basis for the challenged error. *State v. McCoy*, 559 S.W.2d 298, 300 (Mo. App.1977). In addition, we note that all the witnesses for the State at appellant's trial testified in person and were subject to cross-examination. Appellant makes no contention that he was denied full cross-examination or that he was denied the right to impeach any witness by use of testimony at the preliminary hearing because of the alleged defect. Sworn testimony at a preliminary hearing, whether or not signed by the witness giving it, may be used for impeachment purposes. *State v. Thompson*, 280 S.W.2d 838 (Mo.1955); *State v. Rodebush*, 487 S.W.2d 531 (Mo.1972). Finally, we note as a matter of interest that the provision in what was Rule 23.12 that "In all cases of homicide, the evidence given by the witnesses [at a preliminary hearing] * * * shall be signed by the witnesses respectively" has been amended to elimi-

nate the signing requirement. See Rule 22.08 as amended July 27, 1979. Appellant totally fails to demonstrate prejudice.

■ Appellant's third point also borders on the frivolous. The substance of the point is that pursuant to his request for discovery the State furnished him typewritten copies of the statements of certain police officers who were prospective witnesses instead of the original handwritten statements containing the signatures of those witnesses.

Rule 25.32, in effect at time of trial, required the State, "upon written request of defendant's counsel" to disclose, among other things, "the names and last known addresses of persons whom the state intends to call as witnesses * * * at the trial, together with their written or recorded statements, * * *." The record before this court does not contain any such "written request," but it appears that the parties agree that such a request was filed. We again note that although typewritten copies of the statements were furnished well in advance of trial, the above contention was not presented to the court until the day the trial started. The original handwritten and signed copies were immediately made available to appellant when he belatedly requested them. Appellant makes no attempt to demonstrate in what manner he was denied any information that would have been available to him if he had received the original statements at the time he received the typewritten copies.

■ Assuming that the State was in noncompliance with the Rule when it furnished appellant's counsel only the typewritten copies, but we do not so rule, the mere failure to disclose does not, in and of itself, entitle appellant to a new trial, but it must be shown that nondisclosure resulted in fundamental unfairness, *State v. Davis*, 556 S.W.2d 45 (Mo. banc 1977); *State v. Harrington*, 534 S.W.2d 44 (Mo. banc 1976), and this appellant has not done. The point is totally without merit.

■ During voir dire examination by the State the prosecutor made the following statement:

"This is a case where the Defendant has been charged with murder, a crime that allegedly occurred in Cape Girardeau County. It is in this county on change of venue. The questions I ask you are the questions I have a duty to ask in order to properly represent the State."

No other comment was made during the trial regarding the change of venue. Appellant interposed no objection, but after the State concluded its voir dire examination (eight pages later in the transcript) appellant moved for a mistrial because the "State is not entitled to a change of venue and he mentioned the change of venue to the jury." There was no request for any other remedial action.

Appellant relies primarily on *State v. Banton*, 342 Mo. 45, 111 S.W.2d 516 (Mo. 1937), which was distinguished in *State v. Perriman*, 352 Mo. 1022, 180 S.W.2d 668, 669 (Mo.1944), using the following language which is particularly appropriate to the circumstances of this case:

"The jurors were informed only of the fact of a change of venue. They were not told who took the change of venue. There was no statement or hint of the reason for changing the venue. The changing of the venue was not criticised. [sic] There was no accusation against appellant or implication that he or anyone did anything out of the ordinary. There is nothing in the language used to inflame the mind or to cause jurors to depart from sober reflection upon the evidence. Throughout the trial, under the evidence and instructions, all knew the offense, if any, occurred in [Cape Girardeau] county and intelligent jurors must have known the case reached [Perry] county by reason of some change of venue. The remark may have been unnecessary; but it appears to have been innocently made and, unlike appellant's cases, contained nothing of a prejudicial

nature. It is difficult to predicate reversible error upon the statement, without more, of a fact any intelligent juror would understand to be true after hearing the evidence and instructions."

■ Aside from the fact that the objection in the form of a request for mistrial was not timely, the drastic remedy of a mistrial should not be granted unless the prejudice, if any, cannot be removed by other remedial action, *State v. Hoskins*, 569 S.W.2d 235 (Mo.App.1978), and appellant sought no other remedial action. We approve of the rationale of the *Perriman* case, which is dispositive of appellant's fourth point.

■ Appellant next asserts in his fifth and sixth points that the trial court erred in admitting in evidence over his objection and permitting the jury to view two photographs, Exhibits 4 and 5, because they were "not supported by sufficient foundation for their introduction, in that [they] were of a headless, limbless trunk of a human being," they "were never sufficiently identified as being photographs of the victim of the alleged crime of which [he] was convicted," and they were of "such a gorey and gruesome nature and so lacking of probative value that [they] inflamed the jury."

Each photograph was in black and white and was a close-up of only a portion of the body of Herbert Rhyne showing the stab wounds. The fact that the entire body was not shown in the photographs is immaterial when the photographs were otherwise identified.

The doctor testified in reference to Exhibit 4 that it was a photograph showing what was "very similar to the three wounds that Mr. Rhyne suffered when I examined him, looks identical," that the photograph looked "exactly like I remembered his body appearing," and that it was a fair and accurate representation of the way his body looked before surgery on the night of October 1, "even to the point of the dirt on the skin." Appellant's objection to Exhibit 4

was that the photograph was not "tied directly to" Mr. Rhyne and it could be a "picture of anyone."

The doctor identified Exhibit 5 as looking like the photograph the police made, and he stated that "in black and white" it was a fair representation of Rhyne's body as it appeared to him. The only objection to Exhibit 5 was that "it's cumulative." There was no objection that either exhibit was of a "gorey and gruesome nature" or inflammatory.

Subsequently a police officer testified that he saw Mr. Rhyne at the hospital and stayed with him through most of the surgery, and that while "at the scene" and "at the hospital" he saw the wounds Rhyne had sustained. He was then handed Exhibits 4 and 5, and as to Exhibit 4 he stated "those are the wounds in Mr. Rhyne's body," and as to Exhibit 5, he said: "same wounds, a close-up shot."

The photographs were sufficiently identified as being pictures of a portion of the body of Mr. Rhyne showing the stab wounds received by him.

■ We have viewed the photographs. We do not consider them to be particularly gruesome, certainly no more than would result from an accurate picture in black and white of three severe stab wounds in a human body, and they certainly were no more gruesome than an oral description of the wounds. The photographs had probative value, and were relevant to the issues of intent and self-defense, *State v. Morris*, 564 S.W.2d 303 (Mo.App.1978), and tended to clarify and corroborate the testimony of the witnesses. *State v. Davis*, 515 S.W.2d 181 (Mo.App.1974). The court did not err in admitting in evidence Exhibits 4 and 5.

■ Appellant next asserts in his seventh point that prejudicial error resulted when the court refused to suppress the testimony of Randy Peters because the State failed to disclose the identity of the witness and disclose his statement "prior to five

days preceding trial," and appellant was thereby deprived of his opportunity to investigate "and obtain data to impeach" the witness.

Randy Peters was a jail cellmate to whom appellant made inculpatory statements. Appellant's written motion to suppress was for the reason that "Randy Peters was acting as an agent" of the sheriff and therefore "was a government agent at the time the alleged statement was made," and that appellant was not represented by counsel when the statement by him was obtained by Peters. This is not the reason now advanced by appellant on this appeal. However, during argument on the motion to suppress mention was made that a statement, which is shown by Peters' testimony to have been written by him on February 9, was not timely disclosed to appellant. In objecting to the State's motion to endorse Peters as a witness, appellant advanced as a reason that the statement by Peters "was disclosed so late in the game."

It is disclosed by the record that the statement by appellant to Randy Peters was made on February 6; that Peters first reported the conversation to the sheriff on February 9, and that on that day Peters wrote out a statement of the conversation; and that it was not until February 10 that the sheriff advised the prosecutor of the statement made by Peters. In his argument to the trial court and in his brief to this court appellant's counsel admits that he learned of the statement on February 9. We cannot determine from the record the precise time a copy of the statement of Randy Peters was sent to or received by appellant's counsel, but during the argument on the motion to suppress, the prosecutor stated that he "sent the statement to the defense attorneys as quickly as the United States mail would carry it after [he] received it." Appellant did not request a continuance and interposed no objection when Peters testified.

In view of the above circumstances we find no abuse of discretion on the part of the trial court in refusing to suppress the testimony of Randy Peters.

For his eighth and final point appellant asserts that prejudicial error resulted when the trial court overruled his objection to the testimony of Dr. Charles McGinty "concerning from what direction the fatal wounds were inflicted" because, as he asserts, there "was no foundation for such testimony," it was speculative, and the "witness was not qualified to so testify." He cites no case authority.

The doctor first testified as to the nature of the wounds and the damage caused by each. He was then asked whether in the "course of practice as a surgeon, do you attempt in any fashion to reconstruct the way a wound was inflicted," and the doctor answered "Yes." Appellant then objected that "[t]here's been no foundation laid for any forensic study here by this Doctor," and "it would be pure speculation." The prosecutor stated that his next question would "lay a foundation." The doctor was then asked, "Why do you do that, Doctor?" He then continued his testimony, without objection by appellant, and after stating why it is helpful to know the "mode of injury" and to "try to reconstruct from the picture * * * what happened," he testified how, in his opinion based on the location and nature of the injuries, the wounds were inflicted and with what type of instrument.

The contention presented in this point has not been preserved for appellate review. No objection was made after the State laid the foundation supporting the doctor's training, experience and qualification to determine the manner in which the injuries were caused. A trial court will not be held to have committed error for a reason not presented to it. *State v. Crow*, 486 S.W.2d 248 (Mo.1972). We gratuitously add that in any event, there was no error. The qualification of an expert witness is a matter resting primarily in the sound discretion of the trial court, *State v. Harvell*, 527 S.W.2d 445 (Mo.App.1975), and it cannot be

said that the trial court abused that discretion here.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

All of the judges concur.