**Richard A. KING, Director of Revenue, State of Missouri, Appellant,**

v.

**LACLEDE GAS COMPANY, et al., Respondents.**

**No. 64265.**

Supreme Court of Missouri,
En Banc.

March 29, 1983.

Concurring Opinion April 26, 1983.

Rehearing Denied April 26, 1983.

John Ashcroft, Atty. Gen., Melodie A. Powell, Asst. Atty. Gen., Jefferson City, for appellant.

Lawrence J. Bannes, St. Louis, for respondents.

BILLINGS, Judge.

Appeal by the Department of Revenue from an order of the Administrative Hearing Commission granting a tax exemption to Laclede Gas and thereby reversing the decision of the Director to assess sales tax on electricity used by the taxpayer in its public utility business. Exclusive jurisdiction is in this Court. Mo. Const., Art. V, § 3. We reverse the decision of the Administrative Hearing Commission.

The relevant facts have been stipulated. Taxpayer Laclede Gas operates an underground storage field in northern St. Louis County and part of St. Charles County. The field is used to store natural gas during the slack summer season for use during winter months of peak demand. Laclede also constructed an underground cavern for the storage of thirty million gallons of liquid propane which can be vaporized and added to its distribution system when customer demand outstrips the available pipeline supply. Almost half of Laclede's customer requirements during severe cold weather must be met from these facilities. Thus, the storage of natural gas and storage and vaporization of liquid propane are essential for continuous service of Laclede's customers.

In 1979 taxpayer requested exemptions from sales tax on electricity used in the operation of these facilities on the grounds that the electricity was used in a non-commercial, non-domestic, and non-industrial manner;[1] and under § 144.020, RSMo 1978, the Sales Tax Law, was exempt from taxation. The Department denied the application, finding that none of the exemptions set forth in § 144.020, subd. 1(3) applied. Taxpayer appealed to the Administrative Hearing Commission which ruled that un-

der the consolidated holdings of *State ex rel. Kansas City Power and Light Co. v. Smith,* 342 Mo. 75, 111 S.W.2d 513 (Mo. banc 1938) and *Kansas City Power and Light Co. v. Kansas City Public Service Co.,* 342 Mo. 45, 111 S.W.2d 516 (Mo. banc 1938), the use of the electricity was non-commercial and not subject to the tax. Relying on the definition of "commercial" set out in those cases the Commission chose to characterize the underground storage facilities as internal operations and, thus, non-commercial phases of Laclede's business.

Section 144.020, RSMo 1978 states:

1. A tax is hereby levied and imposed upon all sellers for the privilege of engaging in the business of selling tangible personal property or rendering taxable service at retail in this state. The rate of tax shall be as follows:

... (3) a tax equivalent to three percent (3%) of the basic rate paid or charged on all sales of electricity or electrical current, water and gas, natural or artificial to domestic commercial or industrial consumers, ...[2]

12 CSR 10–3.184(6) interprets this statutory language:

Sales of electricity, water or gas to licensed or regulated utilities or common carriers such as water or pipeline companies, telephone and telegraph companies and railroads are subject to the sales tax *unless it is demonstrably shown that the electricity, water or gas is not used for commercial or industrial purposes.* (Emphasis added)

The only issue here is the statutory interpretation of the term "commercial" in § 144.020. Administrative agency decisions based on the agency's interpretation of law are matters for the independent judgment of the reviewing court. *Daily Record Company v. James,* 629 S.W.2d 348, 351 (Mo. banc 1982). We are mindful that

---

1. The application requested exemptions for five areas of operation: underground storage of natural gas; storage of liquid propane gas and *vaporization* thereof; holder stations, which are located at strategic points in the distribution system and allow for short term storage of

gas needed to meet *hourly* changes in customer demands; telemetering and cathodic protection; and "other".

2. The 1979 amendment to this statute contains identical language.

the primary objective of statutory construction is to ascertain the intent of the legislature from the language used, and to give effect to that intent if possible. In doing so we are to consider the words used in the statute in their plain and ordinary meaning. *State v. Kraus,* 530 S.W.2d 684, 685 (Mo. banc 1975). Tax statutes are to be strictly construed in favor of the taxpayer. *Staley v. Missouri Director of Revenue,* 623 S.W.2d 246 (Mo.1981). However, the words of statutes—including revenue acts—should be interpreted where possible in their ordinary, everyday senses. *Hanover Bank v. Commissioner of Internal Revenue,* 369 U.S. 672, 687, 82 S.Ct. 1080, 1088, 8 L.Ed.2d 187 (1961).

■ Webster's New International Dictionary (Second Edition) defines "commercial" as that which has financial profit as a primary aim. It distinguishes the term "mercantile" from "commercial" by noting that "mercantile" refers to the actual buying and selling of commodities, while "commercial" suggests the larger aspects of the operations of exchange.

In the cases on which the Administrative Hearing Commission relies, *Kansas City Power and Light Co. v. Smith,* 342 Mo. 75, 111 S.W.2d 513 (Mo. banc 1938) and *Kansas City Power and Light Co. v. Kansas City Public Service Co.,* 342 Mo. 45, 111 S.W.2d 516 (Mo. banc 1938), the Court declined to use "commercial" in a broad sense, but chose to read it as pertaining only to the buying, selling or exchanging of commodities. The Court reasoned that to broaden the meaning to include everything pertaining to commerce could make the companion statutory term "industrial" superfluous, thereby defeating the maxim of statutory construction to give every word in a statute a meaning if possible. *State ex rel. Kansas City Power and Light Co. v. Smith,* 111 S.W.2d at 515.[3]

In the present case we do not construe the term "commercial" so broadly as to blur its distinctions. Nor can we use the term so narrowly as to preclude a common sense understanding of the operations of this taxpayer.

In the context of governmental regulation, it is well established that:

Commerce, in its simplest signification means an exchange of goods; but in the advancement of society, labor, transportation, intelligence, care, and various mediums of exchange, become commodities, and enter into commerce; the subject, the vehicle, the agent, *and their various operations,* become the objects of commercial regulation. (emphasis added)

*Lorenzetti v. American Trust Co., et al.,* 45 F.Supp. 128, 132 (N.D.Cal.1942), *reversed on other grounds,* 137 F.2d 742 (9th Cir.1943), *cert. denied,* 320 U.S. 770, 64 S.Ct. 82, 88 L.Ed. 460 (1943).

The facts of this case clearly indicate that the use of the electricity was such an integral part of the commercial activities of the taxpayer that to construe the use as unrelated to commerce would result in a rejection of the plain meaning of the statute. Almost half of Laclede's customer requirements during severe winter weather could be met only by the operation of these facilities. The facilities were essential to the utility's successful commercial operation.

Insofar as *Smith* and its companion case can be read to conflict with this holding, they are no longer to be followed.

The decision of the Administrative Hearing Commission granting taxpayer Laclede Gas Company an exemption from sales tax pursuant to § 144.020, subd. 1(3), RSMo 1978 is reversed.

RENDLEN, C.J., and HIGGINS, GUNN and BLACKMAR, JJ., concur.

WELLIVER and DONNELLY, JJ., dissent in separate opinions filed.

WELLIVER, Judge, dissenting.

I concur in the views expressed in Judge Donnelly's dissent. I write only to under-

---

**3.** The statute in *Smith,* a precursor of the present statute, imposed a tax on "sales of electricity or electrical current, water, sewer services, gas (natural or artificial), to domestic commercial or industrial consumers."

score how extraordinary is the principal opinion's departure from established law.

Although the principal opinion purports to give effect to the intent of the legislature, it wholly ignores the fundamental rule of construction, adhered to in this state for more than a century, that "where the Legislature, after a statute has received a settled judicial construction, reenacts or carries forward without change, or reincorporates the exact language theretofore construed, it is to be presumed that it knew of and adopted the judicial construction previously given to the statute." *Roy F. Stamm Electric Co. v. Hamilton-Brown Shoe Co.,* 350 Mo. 1178, 1184, 171 S.W.2d 580, 583 (banc 1943). *See also Messick v. Grainger,* 356 Mo. 1227, 1232, 205 S.W.2d 739, 741–42 (1947); *Jacoby v. Missouri Valley Drainage District,* 349 Mo. 818, 833, 163 S.W.2d 930, 939 (banc 1942); *State ex rel. Steed v. Nolte,* 345 Mo. 1103, 1108, 138 S.W.2d 1016, 1019 (banc 1940); *State ex rel. Sears, Roebuck & Co. v. Haid,* 332 Mo. 701, 705, 60 S.W.2d 41, 43 (1933); *State ex inf. Gentry v. Meeker,* 317 Mo. 719, 723, 296 S.W. 411, 412–13 (banc 1927); *Easton v. Courtwright,* 84 Mo. 27, 34 (1884); *Handlin v. Morgan County,* 57 Mo. 114, 116 (1874). In the forty-five years following this Court's decisions in *State ex rel. Kansas City Power & Light Co. v. Smith,* 342 Mo. 75, 111 S.W.2d 513 (banc 1938), and *Kansas City Power & Light Co. v. Kansas City Public Service Co.,* 342 Mo. 45, 111 S.W.2d 516 (Mo. banc 1938), which construed statutes identical in relevant respects to § 144.020(1)(3), RSMo 1978, the legislature has reenacted the contested language verbatim a total of ten times.[1] Act of July 31, 1979, sec. 1, § 144.020(1)(3), 1979 Mo.Laws 331, 334; Act of Aug. 1, 1975, sec. 1, § 144.020(1)(3), 1975–1976 Mo.Laws 202, 204; Act of May 26, 1972, sec. 1, § 144.020(1)(3), 1971–1972 Mo.Laws 736, 737; Act of July 1, 1965, sec. 1, § 144.-020(1)(3), 1965 Mo.Laws 261, 262; Act of Apr. 25, 1963, sec. 1, § 144.020(1)(3), 1963 Mo.Laws 195, 196; Act of July 7, 1947, sec. 1, § 11408(c), 1947 Mo.Laws (Vol. I) 546, 547; Act of Mar. 29, 1946, sec. 1, § 11408(c), 1945 Mo.Laws 1865, 1869; Act of July 27, 1943, sec. 1, § 11408(c), 1943 Mo.Laws 1012, 1016; Act of Aug. 4, 1941, sec. A, § 11408(c), 1941 Mo.Laws 698, 702; Act of July 8, 1939, sec. A, § 2(c), 1939 Mo.Laws 855, 860. Because of the repeated reenactments of that very language for so long following this Court's construction of it, "[t]he construction has ... become a part of the statute itself." *Ex parte Carey,* 306 Mo. 287, 294, 267 S.W. 806, 808 (banc 1924). *See also Murphy v. Wabash Railroad,* 228 Mo. 56, 86, 128 S.W. 481, 487 (banc 1910). There is no justification for ignoring long-standing legislative history by overruling *Smith* and *Kansas City Public Service Co.* Any change thought necessary should be effected by the legislature and not by this Court.

DONNELLY, Judge, dissenting.

The principal opinion rejects the interpretation of the term "commercial" in the sales tax statute, § 144.020, RSMo 1978 and its predecessors, that has been used since *Kansas City Power & Light Co. v. Smith,* 342 Mo. 75, 111 S.W.2d 513 (banc 1938) and its companion case, *Kansas City Power & Light Co. v. Kansas City Public Service Co.,* 342 Mo. 45, 111 S.W.2d 516 (banc 1938). In those cases, this Court read "commercial" narrowly, permitting some activities to fall within the cracks and avoid the sales tax. The reason now given for overruling these cases is that a "common sense understanding of the operations of this taxpayer"

---

1. The contested language in § 144.020(1)(3), RSMo 1978, regards the sale of electricity to "domestic, commercial or industrial consumers." That language is identical to that in the 1935 enactment. Act of June 5, 1935, § 2(c), 1935 Mo.Laws 411, 415. It differs slightly from that in the original 1934 enactment, which used the language "domestic commercial or industrial consumers" without the comma following the word "domestic." Act of Jan. 15, 1934, § 2A(b), 1933–1934 Mo.Laws (Ex.Sess.) 155, 157. Although the meaning differs with the inclusion or exclusion of the comma, that difference is immaterial for purposes of this case. In *Smith* the Court considered the 1934 act but consistently included the comma when it referred to the statutory language. In *Kansas City Public Service Co.* the Court, on the basis of *Smith,* construed the 1935 act to mean the same as the 1934 act.

indicates that the use of electricity here was an integral part of the commercial activities of the taxpayer.

In my view, there are two important reasons for continuing with the more narrow interpretation. First, the rule that tax laws are to be construed strictly against the taxing authority, *Canteen Corp. v. Goldberg,* 592 S.W.2d 754, 756 (Mo. banc 1980), and where there is a reasonable doubt as to the meaning of a revenue statute, the doubt is resolved in favor of those taxed, C. Sands, Sutherland Statutory Construction, § 66.01 at 179 (4th ed. 1974); *United Air Lines, Inc. v. State Tax Commission,* 377 S.W.2d 444, 448 (Mo. banc 1964), is such a settled rule that it has been called a "fundamental precept". *Stephens v. Glander,* 151 Ohio St. 62, 84 N.E.2d 279 (1949), quoted in C. Sands, *id.; see also Gould v. Gould,* 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211 (1917). When it conflicts with other rules of construction, it should prevail. Second, from the time of *Smith,* the predecessors of § 144.020, RSMo 1978 and its 1979 amendment have remained unchanged. Had the legislature intended a different meaning of "commercial" from that given it by the courts, it would not have used the same language. Where the legislature, after a statute has received settled judicial construction by the court of last resort, re-enacts it or carries it over without change or reincorporates the exact language theretofore construed, it must be presumed that the legislature knew of and adopted such construction. *State ex rel. Smith v. Atterbury,* 364 Mo. 963, 971, 270 S.W.2d 399, 403–04 (banc 1954). In the absence of clear expression of intent by the legislature otherwise, this Court should retain the *Smith* interpretation of "commercial" strictly construing the statute in favor of the taxpayer.

I respectfully dissent.

BLACKMAR, Judge, concurring.

The Court does not overrule *Kansas City Power and Light Company v. Smith,* 342 Mo. 75, 111 S.W.2d 513 (Mo. banc 1938), and the companion case, but simply cautions that they are not to be followed to the extent that they conflict. To me the cases are clearly distinguishable. Natural gas is the taxpayer's product, and, in furnishing gas to its customers, the taxpayer is engaged in the "... selling ... of commodities." The storage is an integral part of a commercial operation, and power furnished to fulfill this obligation is furnished for a "commercial" use, fully as much as the furnishing of power to light and air condition a warehouse in which sacks of flour are stored would be. The Court properly indicates that *Smith* is not to be unduly extended and applies the statute as it is written, using words in their ordinary sense.