STATE of Missouri, Respondent,

v.

**Donald CLARK, Appellant.**

**No. 44035.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Oct. 12, 1982.

Motion for Rehearing and/or Transfer
Denied Nov. 19, 1982.

Application to Transfer Denied
Jan. 17, 1983.

**56**

Joseph W. Downey, Joseph Webb, Mary K. Wefelmeyer, St. Louis, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, George A. Peach, St. Louis, for respondent.

CRIST, Judge.

Defendant was tried and convicted of two counts of murder in the second degree by a jury which was unable to agree upon punishment. The trial court sentenced him to two consecutive terms of twenty-five years imprisonment. We affirm.

Jack Evans and Odell Hardy were sitting in defendant's backyard while he was barbecuing. Kay Hardy, Odell's wife, was nearby in Odell's and her neighboring yard. Defendant told Kay that he liked her, but he did not like Odell or Jack. He stated that he was going to kill them before dark. When the two men laughed, he said "You think I'm kidding?" When Jack licked some of defendant's barbeque sauce, defendant said that was it, and he ran into the house and got a gun.

Defendant fired between Odell and Jack and told them to leave. They laughed as they started to leave. Defendant resumed firing. He shot Jack several times and killed him. As Odell started to run, defendant shot him five times in the back, killing him also.

Officer Jones arrived approximately seven minutes after the shootings. He arrested the defendant. On the way to the police station, defendant told Officer Jones that the two men kept going into his house for beer, and he finally got mad and shot them. Later, he told another officer "I told the cop what I did, now lock me up."

Defendant testified that the victims had attacked him in the past, that they had taken money from him, and that Jack had kicked his three year old daughter prior to the shootings.

Defendant also testified that Jack had threatened him with a butcher knife. He had then gotten the rifle and shot at Odell and Jack through the screen door. Defendant testified that Odell had been approaching him as he fired. A pathologist testified that all five of the bullets had entered Odell's back.

On cross-examination, defendant admitted previous convictions for assault, resisting arrest, and two robberies. He also stated that he did not have a temper.

Defendant asserts error in:

(1) Permitting death qualification questions on voir dire;

(2) Permitting the jury to deliberate on both guilt and sentence;

(3) Permitting the prosecutor, during a penalty phase of the trial to argue to the jury that defendant had prior convictions;

(4) Omitting multiple count instruction MAI–CR 2d 2.70; and

(5) Omitting defendant's character instruction MAI–CR 2d 2.50.

Defendant asserts that the voir dire questioning of the jury panel as a whole and the excusing of two jurors for conscientious opposition to the death penalty caused the jury to become biased in favor of the prosecution. He contends the jurors were biased by hearing other individuals state their objections to capital punishment. Two jurors were excused for cause based on their objection to the death penalty. Both stated unequivocally that they would not impose a death penalty, regardless of the evidence.

The exclusion from a jury of individuals whose personal beliefs make them unable to even consider the death penalty has been upheld by both the United States and the Missouri Supreme Courts. *Witherspoon v. Illinois,* 391 U.S. 510, 522, 88 S.Ct. 1770, 1776, 20 L.Ed.2d 776 (1968) and *State v. Mitchell,* 611 S.W.2d 223, 230 (Mo. banc 1981). Additionally, the death penalty was

not imposed. We find no evidence that other jurors were "tainted" by such exclusion.

Defendant suggests that the court erred in allowing the same jury to deliberate upon guilt and upon sentencing. He says the jury was tainted by the trial and imposed a heavier penalty than it would have had it not been tainted. He does not suggest why.

The trial court followed the procedure for sentencing under § 565.006.2, RSMo.1978, which provides for a presentence hearing at which time "the jury ... shall hear additional evidence in extenuation, mitigation, and aggravation of punishment ..." which may not have been admissible prior to the determination of guilt or innocence. It does not provide for a separate jury to sentence the defendant. These bifurcated hearing procedures under § 565.006, enhance the protection given to a defendant charged with murder. *See, State v. Royal,* 610 S.W.2d 946, 950 (Mo. banc 1981). In any event, the jury in this case was unable to agree upon punishment, and it was fixed by the trial court.

Defendant complains that the prosecutor's argument to the jury during the penalty phase of the trial that defendant had prior convictions and the court's subsequent denial of defendant's motion for mistrial was reversible error. The jury had already heard about the prior convictions during the trial. The trial judge told the jury to disregard the prosecutor's statement at the pre-sentence hearing. The defendant was also sentenced by the judge because the jury could not agree upon punishment, so there was no prejudice to him. The trial judge has broad discretion in not granting a mistrial. It will not be granted "... unless the prejudice, if any, cannot be removed by other remedial action ...." *State v. Jones,* 594 S.W.2d 932, 937 (Mo. 1980).

Defendant asserts error in the trial court's omission of multiple count instruction MAI–CR 2d 2.70. This instruction instructs the jury to consider each offense and the evidence and law applicable to it separately. The trial court refused to submit this instruction to the jury because Note 1 following MAI–CR 2d 2.70 states that the instruction is mandatory *except when capital murder is submitted.* Because capital murder was submitted in this case, this instruction was properly omitted. *See, State v. Hampton,* 607 S.W.2d 225, 227 (Mo. App.1980).

Finally, defendant asserts error in the trial court's refusal to submit his good character instruction MAI–CR 2d 2.50. This instruction instructs the jury that evidence of a defendant's good character was introduced to show he was not the type of person to commit the offense. There was, however, no evidence of defendant's good character.

It was not until cross-examination that defendant's reputation was mentioned. On cross-examination, defendant admitted having previous convictions and a temper and that he did not know what his reputation was.

Rebuttal evidence was introduced that defendant would "get pretty angry sometimes." This evidence was offered to attack defendant's credibility as a witness. Note 2 following MAI–CR 2d 2.50 states that "An attack upon the *credibility* of the defendant as a *witness* by proof of his reputation for truth or veracity or by cross-examination or by proof of prior convictions does not constitute evidence putting the defendant's *character* as a *party* in issue." Thus, submission of this instruction was not necessary. Defendant offered no evidence to show that he was not the type of person to commit capital murder. Lacking such evidence, the instruction was properly refused.

Judgment affirmed.

REINHARD, P.J., and SNYDER, J., concur.