M. V. MARINE CO., M–101 & 102 Barge Co., M–103 & 203 Barge Co., M–201 & 202 Barge Co., M–601 Barge Co., M–602 Barge Co., Gasoline Transport Co., M–504 Barge Co., Appellants,

v.

STATE TAX COMMISSION OF MISSOURI, Respondent.

No. 60994.

Supreme Court of Missouri, En Banc.

Oct. 15, 1980.

Robert J. Domrese and Carroll J. Donohue, St. Louis, for appellants.

John Ashcroft, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

MORGAN, Judge.

The eight appellants challenge the additional assessment of income taxes against each of them for the years 1972, 1973, 1974 and 1975. Each appellant is a wholly-owned subsidiary of Marine Petroleum Company. Each subsidiary and its parent are Missouri corporations with a joint office in St. Louis. In addition to the eight subsidiaries that are the taxpayers here, the parent owns twelve other subsidiaries that also are Missouri corporations. Appellant-taxpayers own barges, a towboat and steel-tank trucks. They generate income from this ownership by renting the same to Marine Transport Company (one of the twelve other subsidiaries) and Marine Petroleum Company (the parent corporation). The income to appellants from the rental of this property is the only income involved in this appeal. Marine Transport Company and Marine Petroleum Company, the *operators* of these barges, towboat and trucks, are not parties to this appeal and their right to apportion and allocate their income from that operation is not presented here. The property owned by appellants is used by the lessee corporations in the interstate transportation and sale of petroleum and petroleum products. Revenue laws being involved, appellate jurisdiction rests with this Court. Mo.Const. art. V, § 3.

For purposes of computing their income tax, appellants allocated their income as having been earned *within* and *without* the state pursuant to § 143.040, RSMo 1969,[1] and § 143.451, RSMo, Supp. 1973.[2]

---

1. This section was repealed effective January 1, 1973, and replaced by various newer statutes. The text of the earlier statute read in pertinent part:

 "1. Each year, at the times and in the manner now or hereafter provided, a tax shall be levied upon, assessed against, collected from, and paid by every corporation, joint stock company, and joint stock association organized, authorized or existing under the laws of this state, and by every corporation, joint stock company and joint stock association, licensed to do business in this state, or doing business in this state, and not organized, authorized, or existing under the laws of this state, ... in such percent, as now or hereafter provided, of the net income from all sources in this state during the preceding year. Income shall include all gains, profits and revenue from the transactions of the business of the corporations in this state, including gains, profits and revenue from the doing in this state of such portions of each transaction of the business of the corporation which transaction is partly done in

2. See note 2 on p. 647.

For the years 1972 and 1973 the owners of the towboat and barges apportioned their rental income on the basis of one–half of the total transportation fees charged by the operating lessee corporations for trips originating and ending in Missouri. In other words, fifty percent of the fee on shipments from some point outside Missouri coming into Missouri, or from some point in Missouri to a point outside Missouri, was considered a Missouri fee subject to Missouri taxation for a lessor–taxpayer as well as for its lessee. For the 1974 and 1975 tax years the owners of the towboat and barges allocated their income according to the actual mileage traveled by each barge and towboat within and without Missouri waters. The Gasoline Transport Company apportioned its rental income for all the years in question on the basis of the mileage traveled by each truck within and without the state of Missouri.

In 1976 the department of revenue notified appellants that their allocation of income for the previous four years had been rejected. Instead they were to be taxed on one hundred percent of their lease income as constituting income from sources within Missouri. These additional assessments were upheld after hearings before the Director of Revenue, the State Tax Commission and the St. Louis County Circuit Court.

In reviewing an administrative decision this Court is limited in its determination to whether the decision was supported by competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable, or whether the commission abused its discretion. *Hermel, Inc. v. State Tax Commission*, 564 S.W.2d 888 (Mo. banc 1978). However, in a case such as this where the facts are generally undisputed and the administrative agency's decision is clearly based upon its interpretation or application of the law, "the administrative conclusions of law and decision based thereon are matters for the independent judgment of the reviewing court, and correction where erroneous." *St. Louis County v. State Tax Commission*, 562 S.W.2d 334, 337–38 (Mo. banc 1979), citing *State Board of Registration for Healing Arts v. Masters*, 512 S.W.2d 150, 158 (Mo. App.1974). It is by this standard we examine appellants' claims of error.

They are: (1) the tax commission's decision does violence to the intent and purpose of § 143.040, RSMo 1969, and § 143.451, RSMo, Supp. 1973 in that it seeks to tax that portion of appellants' rental income having its source entirely outside the state of Missouri; (2) the decision is erroneous in failing to allocate appellants' income as pro-

this state and partly done in another state or states, and all other income from sources in this state as income is otherwise defined. ...

"2. Where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portion of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states. The taxpayer may elect to compute the portion of income from all sources in this state in the following manner: ...."

2. This section reads in pertinent part:

"1. Missouri taxable income of a corporation shall include all income derived from sources within this state.

"2. A corporation described in subdivision (1) of subsection 1 of section 143.441 shall include in its Missouri taxable income all income from sources within this state, including

that from the transaction of business in this state and that from the transaction of business partly done in this state and partly done in another state or states. However:

"(1) Where income results from a transaction partially in this state and partially in another state or states, and income and deductions of the portion in the state cannot be segregated, then such portions of income and deductions shall be allocated in this state and other state or states as will distribute to this state a portion based upon the portion of the transaction in this state and the portion in such other state or states."

The statute sets out a formula available to corporations for apportioning income. Section 143.461, RSMo, Supp. 1973 sets out the process by which a corporation may elect a method of allocation and allows for the use of other methods under certain circumstances where a corporation does not choose to use the statutory formula.

vided for in the cited statutes even though such income results from transactions partially within Missouri and partially in another state; (3) the decision creates an inconsistency and conflict with a policy reflected in related statutory provisions, with the provisions of the Multistate Tax Compact and implementing regulations and with federal rules and regulations requiring apportionment of rental income from leased vessels; (4) the decision fails to hold that certain state statutes prohibited the department from retroactively revoking the allocation of rental income reflected by appellants' tax returns; and (5) the decision is unconstitutional as having imposed an unapportioned tax on 100 per cent of appellants' rental income earned substantially outside the boundaries of Missouri, in violation of the due process and equal protection clauses of the United States and Missouri Constitutions and the commerce clause of the U. S. Constitution.

Allocation of income for state tax purposes is clearly proper under certain circumstances. The appropriateness thereof has been examined several times by this Court but never in a factual setting like the one before us here. Representative cases are: *State ex rel. River Corp. v. State Tax Comm'n*, 492 S.W.2d 821 (Mo.1973), overruled in *International Travel Advisors, Inc. v. State Tax Commission*, 567 S.W.2d 650 (Mo. banc 1978); *A. P. Green Fire Brick Co. v. Missouri State Tax Commission*, 277 S.W.2d 544 (Mo.1955); *Petition of Union Electric Co. of Missouri*, 161 S.W.2d 968 (Mo. banc 1942); *Union Electric Co. v. Coale*, 146 S.W.2d 631 (Mo.1940); *F. Burkhart Mfg. Co. v. Coale*, 139 S.W.2d 502 (Mo.1940); and *Artophone Corp. v. Coale*, 133 S.W.2d 343 (Mo.1939).

Appellants here urge that these cases are conclusive of legislative intent in the area of income allocation and apportionment for tax purposes. Indeed the legislative intent of § 143.040 has been determined by this Court to be an avoidance of discrimination between domestic and foreign corporations and "(1) to impose a tax upon the net income of every corporation 'from all sources in this state'; (2) to impose no tax on income of any corporation, domestic or foreign, from sources wholly without this state; and (3) to impose a tax on that portion of the net income of every corporation, domestic or foreign, which represents the portion done in Missouri of transactions of the corporation which are partly done in this state and partly done in another state or states." *A. P. Green Fire Brick Co. v. State Tax Commission, supra*, at 546, citing *Artophone Corp. v. Coale, supra*. Thereafter, the Court in *Green*, at 547, went on to say that: "In the *Kansas City Star Co.* case, supra, 346 Mo. 658, 142 S.W.2d 1029, wherein the question was what portion of the income of the Star was allocable to Missouri, it was written that the source of income is the place where it is earned or produced—if by labor, the place where the labor was performed; if by capital, the place where the capital is employed."

Reference to these cases alone might lead to the conclusion appellants offer here that this income originates in part from *sources* entirely outside of Missouri and therefore is not taxable by Missouri. However, the legislative taxing scheme in this state has been broadened since the days of *Green*, and now additional law exists in this area which must be construed as well. The Multistate Tax Compact, adopted in Missouri in 1967 and set out in Chapter 32, is the extra factor which must enter into our consideration of this case.

A reading of §§ 143.451, 143.461 and 32.200 reveals that a corporate taxpayer may allocate its income in one of several ways: (1) By multiplying the total Missouri taxable income from all sources for the taxable year by the fraction determined under § 143.451; (2) by allocating and apportioning the total Missouri taxable income from all sources for the year according to the three–factor formula set out in subsections 1 through 17 of article IV of § 32.200; (3) by obtaining permission pursuant to § 143.461 from the director of revenue to use any other method of allocation supported by the corporation's books and records; or (4) by obtaining permission to

use another method pursuant to subsection 18 of article IV of § 32.200 which includes separate accounting, the exclusion of any one or more of the factors, the inclusion of one or more additional factors which will fairly represent the taxpayer's business activity in this state or the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

 As shown by the cases cited, determination of whether a particular taxpayer was entitled to apportion involved a tortured process of discerning the "source" of the taxpayer's income. We find the analysis used in such earlier cases no longer applicable in light of the adoption of the Multistate Tax Compact and § 32.210. That section stated at the time these taxes were due that: "The provisions of the compact shall apply to the state income tax and to the earnings or income tax levied by the political subdivisions of this state." In passing, we note the statute was amended in 1974 to read: "The provisions of this compact shall apply to any tax levied by the state of Missouri or its political subdivisions." The advent of the Compact has simplified the process of determining entitlement to apportion taxes by changing the focus of the inquiry from a search for the "source" of income to a simple showing of jurisdictional "tax liability" in another state.

 With this legislative declaration in mind, we conclude that although taxpayers still are given an option on the *method* of allocation they may use, all other questions reference apportionment of income are to be resolved by reference to the Compact. We reach this conclusion by virtue of the mandatory language of § 32.210, the provisions of § 32.200, art. III, § 1 providing for the choice of methods of allocation and the continued existence of § 143.451 which sets out some of those choices.

The right of a taxpayer to allocate and apportion its income is determined under the Compact by whether it has "income from business activity which is taxable both within and without this state . . . ." In art.

IV, § 3 of the Compact, it is stated that a taxpayer is taxable in another state if:

(1) in that state he is subject to a net income tax, a franchise tax measured by net income, a franchise tax for the privilege of doing business, or a corporate stock tax; or

(2) *that state has jurisdiction to subject the taxpayer to a net income tax regardless of whether, in fact, the state does or not.*

(Emphasis added.)

Section 5 of the same article thereafter provides, in part, that:

(2) Net rents and royalties from tangible personal property are allocable to this state:

(a) if and to the extent that the property is utilized in this state; or

(b) *in their entirety if the taxpayer's commercial domicile is in this state and the taxpayer is not organized under the laws of or taxable in the state in which the property is utilized.*

(Emphasis added.)

According to the testimony of the controller–secretary of each appellant corporation here (and of the parent corporation as well), neither the appellants (excluding Gasoline Transport) nor the lessee corporations paid any state income tax to any other state in relation to the business transactions involved here; thus *we assume* no other state "has jurisdiction to subject the taxpayer[s] to a net income tax . . . ." § 32.200, art. IV, § 3(2). The secretary–controller said he didn't know whether or not Gasoline Transport had paid income taxes in Illinois. However, we note that on the Missouri corporate income tax forms filed by Gasoline Transport, the taxpayer did not list any "corporate income tax of *other states*, their subdivisions and District of Columbia deducted in determining Federal taxable income." For the tax years involved, the companies owning the barges and towboat paid taxes to Missouri on from 8.16 to 30.4 percent of their total taxable income. Gasoline Transport allocated 45.91 to 75.79 percent of its income to Missouri. From the

record before this Court, we can only assume that the remaining income of these corporations went untaxed by any state. While duplicative taxation is to be spurned, so too is the solution appellants urge upon this Court that would permit an avoidance of taxation by any state.

■ In order that appellants have an opportunity to show whether other states have *jurisdiction* to subject them to taxes on the income in question, we remand this proceeding to the state tax commission for the taking of further evidence on this issue and resolution of the same.

■ As to appellants' remaining points, we find them all without merit. We find no conflict of policy between the decision of the tax commission and "the clear state policy" reflected in other tax statutes relating to railroads,[3] telephone and telegraph companies[4] and bridge operations.[5] Such statutes apply to *operators* of those businesses and appellants here are not operators, but *lessors.*

■ Neither is the citation to the Department of Revenue regulation [12 C.S.R. 10-2.075(63)(B)][6] indicative of a policy conflict because that regulation is pertinent to a tax question only after the taxpayer has established its entitlement to allocate and appor-

tion its income pursuant to § 32.200 art. IV, § 2.

The federal tax regulations which appellants urge as incumbent on the state Department of Revenue are in no way germane to the issues involved here.[7] Appellants cite §§ 861(a)(4) and 862(a)(4) of the Internal Revenue Code as providing respectively that rental income derived from properties located in the United States shall be treated as income from sources within the U.S. and that rentals from properties located outside the U.S. shall be treated as income from sources without the U.S. They also cite Rev.Rul. 75–483, 1975–2 C.B. 286 on bareboat leases in which the vessels frequently traveled outside the territorial waters of the United States as indicative of federal tax treatment in what they claim is an analogous situation. Even if these rules and regulations were in some way binding[8] upon the state director of revenue in his construction and interpretation of Chapter 143, they cannot be relied on as indicative of a policy which other state statutes, such as § 32.200, do not adopt. See *Mobil Oil Corp. v. State Tax Commission*, 513 S.W.2d 319, 323 (Mo. banc 1974).

Appellants also contend that the director of revenue impliedly consented to the method of allocation shown in their tax returns

---

3. *See*, § 143.050, RSMo 1969.

4. *See*, § 143.070, RSMo 1969 and § 143.451.6, Cum.Sup.1972.

5. *See*, § 143.060, RSMo 1969 and § 143.451.5, Cum.Sup.1972.

6. The regulation sets out in part:
 The rental, lease, licensing or other use of tangible personal property in this state is a separate income producing activity from the rental, lease, licensing or other use of the same property while located in another state; consequently, if property is within and without this state during the rental, lease, or licensing period, gross receipts attributable to this state shall be measured by the ratio which the time the property was physically present or was used in this state bears to the total time or use of the property everywhere during such period.

7. Sec. 143.961.2, Laws of 1972, empowers the director of revenue to issue rules and regula-

tions to aid in the construction and interpretation of Chapter 143 which:
> ... shall follow as nearly as practicable the rules and regulations of the Secretary of the Treasury of the United States or his delegate regarding income taxation. Such construction of Sections 143.011 to 143.996 will further their purposes to simplify the preparation of income tax returns, aid in their interpretation through use of federal precedents, and improve their enforcement.

8. In this regard we note that the United States Supreme Court in *Mobil Oil Corp. v. Commissioner of Taxes of Vermont*, 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980), rejected federal statutes and treaties cited as reflecting federal tax policy, saying they were not germane to the issue of multiple state taxation that the appellant there had framed. "Absent some explicit directive from Congress, we cannot infer that treatment of foreign income at the federal level mandates identical treatment by the states." *Id.* at 448, 100 S.Ct. at 1237.

and cannot now revoke the method retrospectively. A similar issue was addressed in the *Star* case, *supra,* wherein this Court said that the filing of the verified returns was an implied request for approval of the method of allocation and that because the form was not adapted to show the method of allocation chosen by the taxpayer, it was sufficient that the taxpayer indicated on the form that it was using a method of allocation other than the statutory formula and that there was and could be no actual segregation of intrastate income from interstate income. 142 S.W.2d at 1036.

In that case the newspaper's *right* to allocate as well as its method of allocation were approved by this Court. In this case, if appellants had no right to allocate (an issue to be resolved on remand), it hardly can be said that simply by filing returns using an undocumented method of allocation,[9] they acquired the right irrevocably. A different question would be presented if the director of revenue were attempting to impose some other method of allocation on appellants here. The *Star* rule might be subject to re-examination in such a situation. However, the holding in the *Star* case does not bind the director of revenue to accept by implied consent a taxpayer's decision on its entitlement to allocate. In this case the director of revenue never accepted the assertion that appellants were entitled to allocate and therefore no improper revocation has taken place.

Likewise, the claim that an unnamed representative of the Department of Revenue orally assured appellants' accountant that the method of allocation would be acceptable is of no weight in this proceeding because such an assurance would not be binding on the Department of Revenue.

Appellant's first constitutional claim is that the tax commission's decision and order is void and violative of due process under the United States and Missouri constitutions in that it seeks to impose an unapportioned tax on taxpayer's income which it contends it earned entirely outside the borders of Missouri. The cases cited to the Court by appellants are inapposite because they deal with a state's right to tax

---

9. An examination of the tax returns included in the record before this Court shows that appellants were allocating according to a percentage, but no explanation or indication of the basis of that method can be found. Under Regulations officially filed by the director of revenue on December 22, 1975, taxpayers now are informed of exactly what information to include in the petition to use a non-statutory method of allocation. Parts of 12 C.S.R. 10–2.050 are reprinted below:

(5) Request for Permission to Use Other Method: A corporation may make a written petition to the director for permission to determine income applicable to this state for the taxable year by use of its own allocation method if the books and records of the taxpayer are kept in such a manner as to show such other method of allocation between this state and other states involved of income from transactions partly within and partly without this state, including gross income and deductions applicable thereto, and such method does show the income applicable to this state, including gross income and deductions applicable thereto.

(6) Petition For Use of Other Approved Method: A petition for permission to use a method of allocation disclosed in the taxpayer's books and records shall be typewritten, delivered to the director of revenue in Jefferson City, Mo. at least sixty days (60) before the end of the taxable year with respect to which the permission is sought, shall be made on the best information, knowledge and belief of the petitioner and shall be subscribed under a declaration that it is made under penalties of perjury. The petition shall contain the name, federal identification number and address of the principal place of business of the petitioner; the address of each location at which the taxpayer conducts business and the nature of the business conducted at each such location; the place or places at which the books and records of the taxpayer are located; the beginning and ending dates of the first taxable year with respect to which permission to use another method is sought; a detailed explanation of the allocation method disclosed in the corporation's books and records; a clear demonstration of the application of such method by showing each item of income and expense for the taxable year immediately preceding the taxable year with respect to which permission is sought, the states to which income and expense are allocated, and the amounts of each item of income and expense allocated to each such state, and such other data and information which the corporate taxpayer would urge upon the director in his consideration of the petition.

income of a foreign corporation. Independent research has revealed no others directly on point. However, on the issue of a state's right to tax a domiciliary individual on income from another state, the United States Supreme Court in *Maguire v. Trefry,* 253 U.S. 12, 40 S.Ct. 417, 64 L.Ed. 739 (1920) and later in *New York ex rel. Cohn v. Graves,* 300 U.S. 308, 57 S.Ct. 466, 81 L.Ed. 666 (1937), affirmed the authority of a domiciliary state to tax all income of a resident individual irrespective of its source. As to the application of these cases to domiciliary corporations, J. Nowak, R. Rotunda and J. Young write in *Constitutional Law* at 316 (1st ed. 1978):

> The same principles of due process which have developed with respect to jurisdiction to impose income taxes upon individuals appear equally applicable to corporations. If a corporation is organized under the laws of the taxing state, it is taxable as a domiciliary corporation upon all its income whether derived from within or without the state of domicile. Although there appears to be no direct Supreme Court decision on point, it does not seem to be a seriously debatable issue in light of the decisions relating to individuals. Under principles of due process, jurisdiction to tax all the income of a domestic corporation is particularly apropos in view of the fact that the tax–payer corporation derives its very existence from the taxing state.

If this analysis is correct, appellants' due process claim here is totally without merit. If instead the test to be applied is that set out in due process cases involving foreign corporations–"whether the taxing power exerted by the state bears fiscal relation to protection, opportunities and benefits given by the state," *Wisconsin v. J. C. Penney Co.,* 311 U.S. 435, 444, 61 S.Ct. 246, 249, 85 L.Ed. 267 (1940), *reh. denied,* 312 U.S. 712, 61 S.Ct. 444, 85 L.Ed. 1143 (1941)–appellants have failed to meet their burden to show otherwise. See also *Mobil Oil Corp. v. Commissioner of Taxes of Vermont,* 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510 (1980). Under the circumstances, this point is denied.

■ Appellants also claim that the imposition of a tax on one hundred percent of its rental income constitutes an unreasonable burden on interstate commerce in violation of Article I, § 8, Clause 3 of the United States Constitution. In *Northwestern States Portland Cement Co. v. Minnesota,* 358 U.S. 450, 79 S.Ct. 357, 3 L.Ed.2d 421 (1959), the court noted the controlling rationale in a commerce clause discussion to be "the distinction made by the United States Supreme Court between a tax whose subject is the net income from such commerce." *Id.* at 461, 79 S.Ct. at 364, quoting from *West Publishing Co. v. McColgan,* 328 U.S. 823, 66 S.Ct. 1378, 90 L.Ed. 1603 (1946), *reh. denied,* 329 U.S. 822, 67 S.Ct. 35, 91 L.Ed. 699 (1945). Here as in *Northwestern* the subject of the tax at issue is *not* the privilege of engaging in interstate commerce. In addition, for the purposes of a determination under the commerce clause we find that appellants have failed to show this income was earned outside the state thereby calling the requirement of "fair apportionment among the states" into play.

In this case the appellants' activities outside the state include: (1) taking delivery of the barges and towboats in Kentucky; (2) paying a fee to a Missouri corporation (the parent company) for services of a port captain in arranging for necessary repairs to be made at convenient shipyards along the rivers and in obtaining initial certificates and licenses and ongoing certificates of seaworthiness required by the Coast Guard.[10] No evidence of specific out–of–state contacts was presented regarding the owner of the trucks. Testimony did indicate that the taxpayer was obligated by the lease agreement to keep the trucks in good repair and that it employed maintenance men in Missouri for that purpose. The taxpayer also was obligated to provide all licenses and insurance for the trucks but the extent, if any, of the contact with the state of Illinois

---

**10.** Evidence indicated that the port captain's tasks sometimes required him to travel outside Missouri to the location of one of the barges or boat.

in this regard was not developed. The trucks were garaged in St. Louis, and rental payments under the terms of the lease were based on mileage figures. There was no evidence that taxpayers maintained business offices outside the state, that they employed individuals stationed outside the state, that they were qualified to do business outside the state or, as mentioned before, that they paid state income taxes outside the state. We find no evidence before us that appellants transacted business outside the state. This being the case, no issue of interstate commerce is before us.

The Court also declines to reach the equal protection claim advanced by appellants. They contend that if the ruling of the tax commission is upheld the result will be to impose an unapportioned tax on Missouri domiciliary corporations while subjecting non-domiciliary corporations "engaged in identical transactions" to an apportioned tax or no tax at all, in violation of art. I, § 2 of the Missouri Constitution and the fourteenth amendment to the U. S. Constitution. To hold as appellants urge in this regard would require speculation on how a foreign corporation would be taxed if "engaged in identical transactions" and whether treatment of a foreign corporation in a manner different from that set out here for appellants would be violative of equal protection. Under these circumstances, where only a hypothetical disparity in treatment is alleged, a ruling on the point is unnecessary.

Although we are inclined to affirm the decision and order of the state tax commission as supported by competent and substantial evidence on the whole record, we instead reverse and set aside the judgment entered that the cause may be remanded to the commission to provide appellants with an opportunity to show their *entitlement*, if any, to allocate their income pursuant to the requirements of § 32.200.

BARDGETT, C. J., DONNELLY, RENDLEN, SEILER and WELLIVER, JJ., and WELBORN, Special Judge, concur.

HIGGINS, J., not participating because not a member of the Court when cause was submitted.