**DEPARTMENT OF SOCIAL SERVICES, Respondent,**

v.

**OUR LADY OF MERCY HOME, Appellant,**

and

**Administrative Hearing Commission, Defendant.**

**Cosada Villa of Missouri, Amicus Curiae.**

**No. WD 42806.**

Missouri Court of Appeals, Western District.

Dec. 18, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 1991.

Application to Transfer Denied March 5, 1991.

---

Dennis P. Colombo, Kansas City, for appellant.

Richard Beaver, Dept. of Social Services, Jefferson City, for respondent.

Lem T. Jones, Jr., Elizabeth A. Hall, Jones & Lehr, P.C., for amicus curiae.

Before LOWENSTEIN, P.J., and FENNER and ULRICH, JJ.

ULRICH, Judge.

Our Lady of Mercy Home (Our Lady) appeals the Circuit Court judgment reversing the decision of the Administrative Hearing Commission (Commission) to grant appellant an increase in its medicaid reimbursement rate. On appeal, Our Lady contends that the circuit court erred in reversing the Commission's decision to award appellant an increase in its medicaid reimbursement rate due to appellant's use of an erroneous accounting methodology in developing the base report utilized in computing appellant's reimbursement rate. The

judgment is reversed, and the case is remanded to the Circuit Court with directions to enter judgment affirming the Administrative Hearing Commission's decision.

Our Lady is a long-term care facility authorized under Missouri law to provide nursing home services for medicaid recipients. The Department of Social Services (DSS) is the state agency charged with the administration of the medicaid program pursuant to 42 U.S.C. § 301, et seq., and chapter 208, RSMo 1986. Pursuant to state regulation, DSS reimburses long-term care facilities for services rendered to medicaid recipients. 13 C.S.R. 40-81.-081(2)(b) (1982).[1] DSS relies upon a nursing home's financial report for the fiscal year ending June 30, 1982, to compute the facility's reimbursement rate. The facility's 1982 financial report is referred to as the base report. By utilizing the facility's base report together with certain allowances which reflect economic trends, DSS calculates the facility's reimbursement rate for the current year.

Pursuant to the regulatory scheme, a long-term care facility may seek an adjustment in its reimbursement rate by applying for informal rate reconsideration with the Director of DSS. 13 C.S.R. 40-81.081(7). The Director, exercising his discretion, refers informal rate reconsideration applications which reflect "significant and extraordinary circumstances" to an advisory committee which reviews them and makes recommendations. C.S.R. 40-81.-081(7)(B)1.d.

Our Lady's financial report for the fiscal year ending June 30, 1982, which became its base report for the purposes of medicaid reimbursement, was prepared by an accountant that Our Lady had retained since 1957. Our Lady had experienced substantial losses while reimbursed at the rate calculated by relying upon the facility's base report. Eventually, Our Lady hired an accounting firm with extensive experience in providing accounting services for Missouri medicaid providers.

Our Lady's new accounting firm determined that the previous accountant had prepared the base report using erroneous data and an inadequately documented means of allocating costs. The new accounting firm determined that the facility's base report resulted in insufficient medicaid reimbursement to Our Lady. Given the practice of utilizing the base report in calculating reimbursement rates, an inadequate base report presented a continuing detriment to the facility. In response to the information provided by the new accountants, Our Lady applied for informal rate reconsideration with the Director of DSS.

Upon receiving appellant's request, the Director of DSS determined that a review of appellant's reimbursement rate was warranted due to "significant and extraordinary circumstances" and referred appellant's request to the rate advisory committee. The advisory committee recommended that DSS grant appellant a rate increase. DSS rejected the advisory committee's recommendation and notified Our Lady of its decision not to grant a rate increase.

Appellant contested DSS' denial of the requested medicaid reimbursement rate increase before the Administrative Hearing Commission. The Commission concluded that Our Lady's base report was "grossly inadequate." The Commission further found that the inadequacies in the base report resulted in "significant and extraordinary circumstances" which warranted an increase in appellant's medicaid reimbursement rate.

DSS appealed the decision of the Commission to the Circuit Court of Cole County, Missouri. The circuit court determined that the accounting methodology employed by appellant's first accountant did not constitute a "significant and extraordinary circumstance" under Missouri law and reversed the decision of the Commission.

---

1. Since the time that this dispute arose, the regulation in question, 13 C.S.R. 40-81.081, has been amended and renumbered as 13 C.S.R. 70-10.010 (1990). All references to medicaid regulations will be in the numbering system used by the Administrative Hearing Commission and the Circuit Court of Cole County, Missouri.

Our Lady appeals the decision of the circuit court and contends that the Commission properly determined that it is entitled to a medicaid reimbursement rate increase due to the "significant and extraordinary circumstances" involving the facility's inadequate base report.

■ This court is obligated to review the decision of the Commission and not the judgment of the circuit court. *First Bank of Commerce v. Labor & Industrial Relations Comm'n*, 612 S.W.2d 39, 42 (Mo.App. 1981). Generally, in reviewing the decision of an administrative agency, appellate courts are limited to determining whether the decision is supported by competent substantial evidence upon the whole record, whether it is arbitrary, capricious, or unreasonable, or whether the Commission abused its discretion. *M.V. Marine Co. v. State Tax Comm'n*, 606 S.W.2d 644, 647 (Mo. banc 1980). However, an administrative agency's decision based upon the agency's interpretation of law is a matter for the independent judgment of the reviewing court. *King v. Laclede Gas Co.*, 648 S.W.2d 113, 114 (Mo. banc 1983). In cases such as this, where the pertinent facts are undisputed between the parties, the appellate court will review the matter as a question of law. *See M.V. Marine Co.*, 606 S.W.2d at 647; *Central Bank of Clayton v. State Banking Bd.*, 509 S.W.2d 175, 190 (Mo.App.1974).

■ The regulation in question here provides that a long-term care facility is entitled to a reimbursement rate increase if the facility experiences "significant and extraordinary circumstances." Thus, the meaning of "significant and extraordinary circumstances" is relevant. The primary objective in construing statutory or regulatory language is to ascertain the intent of the drafters from the language used and to give effect to that intent if possible. *King v. Laclede Gas Co.*, 648 S.W.2d at 115. In interpreting language, words are to be considered in their plain and ordinary meaning. *Id.*

■ The Missouri Supreme Court has previously defined the word extraordinary as something "beyond or out of the common order or rule; not of usual, customary, or regular kind." *Courtney v. Ocean Accident & Guaranty Corp.*, 346 Mo. 703, 142 S.W.2d 858 (1940). The Commission, in reaching its decision in this case, applied the definition of extraordinary adopted by the Missouri Supreme Court in *Courtney*. Additionally, in *Monroe County Nursing Home District v. Missouri Dep't of Social Services*, 778 S.W.2d 721 (Mo.App.1989), the definition of extraordinary found in *Courtney* was applied to the "significant and extraordinary circumstance" language found in 13 C.S.R. 40–81.081.

In *Monroe County*, a Missouri nursing home participating in the state-administered medicaid program sought rate reconsideration under the "significant and extraordinary circumstances" provision of the regulation at issue here. *Id.* at 722. In *Monroe County*, at the time the nursing home developed its base report, the facility offered no health insurance plan to its employees. *Id.* Due to a high employee attrition rate, the nursing home found it increasingly necessary to provide health insurance to employees. *Id.* The nursing home argued that the purchase of a health insurance plan for its employees amounted to an extraordinary expense entitling it to increased medicaid reimbursement under the regulation. *Id.* In *Monroe County*, this court applied the definition of extraordinary found in *Courtney* and concluded that the facts of the case entitled the nursing home to a reimbursement rate increase due to a "significant and extraordinary circumstance." *Id.* at 724.

DSS urges this court to adopt an interpretation of significant and extraordinary circumstances consistent with 13 C.S.R. 40–81.081(4)(A)3, which provided in part:

[t]he prospectively determined reimbursement rate may be adjusted only under the following conditions ... [w]hen the facility experiences estraordinary [sic] circumstances including an act of God, war, or civil disturbance, adjustments to reimbursement rates may be made in these circumstances.

Specifically, DSS argues that significant and extraordinary circumstances are limit-

ed to acts of God, war, and civil disturbances or similar situations. Such a definition wholly ignores that 13 C.S.R. 40-81.-081(4)(A)3 [2] also provided for reimbursement rate adjustment pursuant to the provisions of subsection 7, the subsection of the regulation which provided for reimbursement rate adjustment due to significant and extraordinary circumstances. The fact that subsection (4)(a)3 provided for adjustment under both "acts of God, war or civil disturbances" and "significant and extraordinary circumstances" suggests that these grounds for adjustment are not identical, that "significant and extraordinary circumstances" are not exclusively "acts of God, war or civil disturbances," and that "significant and extraordinary circumstances" encompass situations not contemplated by "acts of God, war or civil disturbances." Additionally, DSS' interpretation contravenes the holding in *Monroe County* as the lack of an employee insurance plan is neither an act of God, war nor civil disturbance.

■ The definition of "extraordinary and significant circumstances" provided in *Monroe County* applies. Medicaid reimbursement rate adjustment is proper when a nursing home demonstrates a circumstance "beyond or out of the common order or rule; not of usual, customary, or regular kind." 778 S.W.2d at 723. The Commission applied this definition and concluded that Our Lady's base report was "grossly inadequate." Additionally, the Commission found that the nursing home's prior accountant was so lacking in the skills necessary to prepare a base report for medicaid reimbursement that the accountant was "not just worthless but harmful." Receiving medicaid reimbursement pursuant to a base report which is "grossly inadequate" and prepared by an accountant who is "harmful" certainly is "beyond or out of the common order or rule; not of usual, customary or regular kind." Our Lady's base report and resulting economic loss demonstrates a "significant and extraordinary circumstance" and entitles the facility to medicaid rate adjustment pursuant to 13 C.S.R. 40-81.081. The judgment is reversed, and the case is remanded to the Circuit Court with directions to enter judgment affirming the Administrative Hearing Commission's decision.

FENNER, J., concurs;

LOWENSTEIN, P.J., concurs in separate concurring opinion.

LOWENSTEIN, Presiding Judge, concurring.

The magnitude of the error in the base report and the resulting unfairness constitute the extraordinary and significant circumstances to allow relief to the provider. The problem here was caused by the agent of Our Lady. In future cases, I believe courts should use this case as precedent only when presented with extraordinary and significant circumstances similar to those exhibited in this case.

---

**2.** 13 C.S.R. 40–81.081(4)(A)3 provided:

3. Adjustment to Rates. The prospectively determined reimbursement rate may be adjusted only under the following conditions:
A. When information contained in cost reports is found to be misrepresented or to include unallowable costs in accordance with 13 CSR 40–81.081. Such adjustment shall be made retroactive. Such adjustment shall not preclude the Medicaid agency from imposing any sanctions authorized by any statute or regulation;

B. When the facility experiences estraordinary [sic] circumstances including an act of God, war or civil disturbance, adjustments to reimbursement rates may be made in these circumstances;
C. When a change is made pursuant to provisions of section (7) of this rule; or
D. When a reduction in rate is made by the director due to a change in the level of care provided by a facility. The following changes in level of care may justify such a reduction: SNF/ICF to ICF only; SNF only to SNF/ICF; SNF to ICF.