**COSADA VILLA OF MISSOURI, INC., Appellant,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES AND ADMINISTRATIVE HEARING COMMISSION, Respondent.**

**No. WD 47925.**

Missouri Court of Appeals,
Western District.

Jan. 4, 1994.

158

James A. Snyder, Kansas City, for appellant.

Karolin R. Solorzano, Jefferson City, for respondent.

Before HANNA, P.J., and LOWENSTEIN and FENNER, JJ.

FENNER, Judge.

Appellant, Cosada Villa of Missouri, Inc. (Cosada), appeals the decision of the trial court affirming the decision of the Administrative Hearing Commission (AHC) finding that Cosada was not entitled to a rate adjustment as applied for.

Cosada operates a long-term skilled nursing facility in Kansas City, Missouri, and participates in the Missouri Medicaid program. Respondent, Missouri Department of Social Services (DSS), is the state agency charged with administration of the Missouri Medicaid program.

Cosada made application to participate in the Missouri Medicaid program and received approval on August 6, 1984. Pursuant to Missouri regulations, DSS reimburses nursing homes participating in the Medicaid program for services provided to Medicaid recipients. DSS relied on Cosada's financial report for Cosada's first year of operations (base cost report) to compute its reimbursement rate. By relying on the base cost report, together with allowances based on current economic trends, DSS computes the reimbursement rate for each subsequent year of the facility's operations.

Cosada's base cost report was for fiscal year 1985 which covered from August 1, 1984 through July 31, 1985. Cosada submitted its base cost report and, based on that report, DSS set Cosada's initial reimbursement rate at $44.57. After its first year of operation, Cosada became aware of significant accounting errors in its base cost report.

On November 25, 1986, Cosada applied for a rate increase alleging "extraordinary circumstances" arising from the improper base cost report prepared by an independent accounting firm. DSS denied Cosada's request and Cosada appealed to the AHC. The AHC found that there were significant errors in Cosada's base cost report as follows: a) No costs were allowed for the pharmacy, central supply or medical supplies, which resulted in omissions from the report of $148,000; b) Employee benefits of $35,000 were omitted from the report; c) Professional dues and license fees of $2,400 were omitted from the report; d) Franchise and occupation taxes of $4,500 were omitted from the report; e) Real estate taxes were understated by $24,000; f) Maintenance and repair costs were understated by $30,000; g) Advertising costs were understated by $65,000; h) Nursing costs were understated by $214,000; and i) Projected revenues were overstated by $609,000.

Nonetheless, the AHC determined that Cosada was not entitled to a rate increase and denied the request. On appeal to the Circuit Court of Platte County, the decision of the AHC was affirmed.

In this appeal, Cosada argues that it is entitled to have its reimbursement rate increased pursuant to 13 CSR 40–81.081(4)(A)3.B, as in effect in 1984 (hereafter referred to as 13 CSR (1984)), because it experienced "extraordinary circumstances" by virtue of the gross accounting errors in its base cost report.

On appeal we review the decision of the AHC and not the judgment of the circuit court. *City of Cabool v. Missouri State Board of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). Generally, an appellate court's review of a decision of an administrative agency is "limited to determining whether the decision is supported by competent substantial evidence upon the whole record, whether it is arbitrary, capricious, or unreasonable, or whether the Commission abused its discretion." *Department of Social Services v. Our Lady of Mercy Home,* 803 S.W.2d 72, 75 (Mo.App.1990) (citing *M.V. Marine Co. v. State Tax Comm'n,* 606 S.W.2d 644, 647 (Mo. banc 1980)). However, decisions of the AHC based on the interpretation or application of law are not binding on the appellate court and are a matter for the reviewing court's independent judgment. *Id.*

13 CSR (1984) provides as follows:

3. Adjustment to Rates. The prospectively determined reimbursement rate may be adjusted only under the following conditions:

\* \* \* \* \* \*

B. When the facility experiences extraordinary circumstances including an act of God, war or civil disturbance, adjustments to reimbursement rates may be made in these circumstances.

However, the regulation was amended as 13 CSR 40–81.081(4)(A)3.B with an effective date of November 1, 1985 (hereafter referred to as 13 CSR (1985)).[1] Order of Rulemaking, 10 Mo.Reg. 1790 (October 16, 1985).[2] 13 CSR (1985) provides as follows:

3. The prospectively determined reimbursement rate may be adjusted only under the following conditions: . . .

B. When the provider can show that it incurred higher cost due to circumstances beyond its control and the circumstance is not experienced by the nursing home industry in general, the request must have a substantial cost effect. These circumstances include but are not limited to—

(I) Acts of nature such as fire, earthquakes and flood that are not covered by insurance;

(II) Vandalism and/or civil disorder; or

(III) Replacement of capital depreciable items not built into existing rate that are the result of circumstances not related to normal wear and tear or upgrading of existing systems.

The question arises as to which regulation is applicable here, 13 CSR (1984) or 13 CSR

1. The AHC referred to the amended regulation as 13 CSR 40–81.081(4)(A)3.E in its order. This reference was in error in that the amended regulation retained the same cite, 13 CSR 40–81.081(4)(A)3.B.

2. Since its amendment in 1985, 13 CSR 40–81.081 has been amended again effective July 1, 1990. The regulation for Prospective Reimbursement Plan for Long–Term Care is currently found at 13 CSR 70–10.010. The provision for extraordinary circumstance adjustment, effective July 1, 1990, is 13 CSR 70–10.010(12)4.(B)2.A. which provides as follows:

A. Extraordinary circumstances.

(I) When the provider can show that it incurred high cost due to circumstances beyond its control and the circumstances are not experienced by the nursing home industry in general, the request must have a substantial cost effect.

(II) These circumstances include, but are not limited to:

(a) Acts of nature, such as fire, earthquakes and flood, that are not covered by insurance; and

(b) Vandalism, civil disorder or both . . .

13 CSR 70–10.010 was not in effect at the time the AHC rendered its decision in the case at bar. However, the relevant language of 13 CSR 70–10.010 for purpose of the issue in this case remains the same as 13 CSR (1985).

(1985). At the time Cosada's base cost reimbursement rate was determined, 13 CSR (1984) was in effect. However, at the time Cosada filed its request for a rate increase, November 25, 1986, 13 CSR (1985) was the effective regulation. Cosada argues that it is entitled to have its base cost reimbursement rate reviewed under the regulations in effect at the time the base cost report was compiled, i.e., 13 CSR (1984). Cosada argues that applying 13 CSR (1985) would be an unlawful retrospective application of the law.

■ Article I, § 13 of the Missouri Constitution provides that "no ex post facto law, nor law impairing the obligation of contracts, or retrospective in its operation, or making any irrevocable grant of special privileges of immunities, can be enacted." Duly promulgated substantive regulations have the force and effect of laws. *Department of Social Services v. Villa Capri Homes*, 684 S.W.2d 327, 332 (Mo. banc 1985).

■ "The constitutional inhibition against laws retrospective in operation ... does not mean that no statute relating to past transactions can be constitutionally passed, but rather that none can be allowed to operate retrospectively so as to affect such past transactions to the substantial prejudice of parties interested." *Fisher v. Reorganized School District No. R–V*, 567 S.W.2d 647, 649 (Mo. banc 1978) (quoting *Willhite v. Rathburn*, 332 Mo. 1208, 61 S.W.2d 708, 711 (1933)). A retrospective law is one which impairs existing vested rights. *State Bd. of Registration v. Warren*, 820 S.W.2d 564, 565 (Mo.App. 1991) (citations omitted). However, no one has a vested right in a general rule of law or legislative policy which would entitle anyone to insist that a law remain unchanged. *State v. Thomaston*, 726 S.W.2d 448, 460 (Mo.App. 1987) (citations omitted). This is particularly true in the case of nursing homes participating in Medicaid programs. These nursing homes operate at risk and are subject to changing guidelines. *Villa Capri Homes*, 684 S.W.2d at 332.

■ Cosada's argument that 13 CSR (1984) should be applied is without merit. At the time Cosada filed its request for a rate adjustment, the effective regulation was 13 CSR (1985). The rate adjustment that Cosada sought could only be made effective as of the first day of the month following the Director's determination in regard to the request for adjustment. 13 CSR 40–81.-081(3)(A).2. Cosada is not entitled to a retroactive rate increase under the applicable state regulations and does not have a vested right in applying past regulations to future reimbursement rates.

The effective regulation for purposes of this appeal is 13 CSR (1985). The application of 13 CSR (1985) under the circumstances presented here is not retrospective in operation. It only has application prospectively in regard to future reimbursement rates.

Nonetheless, Cosada argues that regardless of whether 13 CSR (1984) or 13 CSR (1985) is applicable, the case of *Department of Social Services v. Our Lady of Mercy Home*, 803 S.W.2d 72 (Mo.App.1990), is controlling in determining that Cosada experienced circumstances which warrant a rate increase. In *Our Lady*, the court held that a base cost report used to calculate the nursing home's Medicaid reimbursement rate, which was grossly inadequate and prepared by an accountant whose services were "not just worthless but harmful," combined with the nursing home's resultant economic loss, was a "significant and extraordinary circumstance" which entitled the facility to an increased Medicaid reimbursement rate. *Id.* at 76.

In *Our Lady*, the court was applying 13 CSR (1984) which did not require that the circumstances be beyond the control of the nursing home before the reimbursement rate could be adjusted as is required under the applicable regulation here, 13 CSR (1985). Consequently, *Our Lady* is not controlling in the case at bar. As referenced above, 13 CSR (1985) provides, in relevant part, as follows:

3. The prospectively determined reimbursement rate may be adjusted only under the following conditions: ...

E. When the provider can show that it incurred higher costs due to circumstances beyond its control and the cir-

cumstance is not experienced by the nursing home industry in general....

■ The primary rule of statutory construction is to ascertain the lawmakers' intent from the language used and, if possible, to give effect to that intent. *May Department Stores Co. v. Director of Revenue,* 791 S.W.2d 388, 389 (Mo. banc 1990). Words are to be considered in light of their plain and ordinary meaning. *Id.*

■ Under the above regulation, 13 CSR (1985), the provider must be able to show that the higher costs it incurred were due to circumstances *beyond its control.* Control is defined as the power or authority to guide or manage. Webster's Ninth New Collegiate Dictionary 285 (1986). Furthermore, it is well established that a principal is responsible for the acts of its agent, done within the agent's authority, even if the acts of the agent are done negligently or other than in a manner that the principal desired. *Maryland Casualty Co. v. Huger,* 728 S.W.2d 574, 579 (Mo.App.1987).

The record in the case at bar clearly reflects that Cosada incurred higher costs and it is reasonable to infer that because of the significant dollar amounts of the accounting errors, such costs were not incurred by the nursing home industry in general. The determining factor here is whether the accounting errors were beyond Cosada's control. In other words, were the errors made by the accountant that Cosada hired beyond Cosada's control?

The accountant was hired by Cosada to perform the accounting necessary for the base cost report. Thus, the accountant was acting as the agent of Cosada, and Cosada was responsible for the accountant's errors in compiling Cosada's base cost report. The acts of the accountant preparing Cosada's cost report were within Cosada's control and, therefore, Cosada is not entitled to a rate adjustment pursuant to the terms of 13 CSR (1985).

Judgment affirmed.

All concur.