### SOUTHEAST MISSOURI HOSPITAL ASSOCIATION, Appellant,

v.

### MISSOURI DEPARTMENT OF SOCIAL SERVICES, DIVISION OF MEDICAL SERVICES, Respondent.

#### No. WD 48677.

Missouri Court of Appeals,
Western District.

Aug. 30, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 4, 1994.

Application to Transfer Denied
Nov. 22, 1994.

---

Richard Donald Watters, St. Louis, for appellant.

Richard Beaver, Jefferson City, for respondent.

Before HANNA, P.J., and BRECKENRIDGE and ELLIS, JJ.

ELLIS, Judge.

Southeast Missouri Hospital Association ("Southeast") appeals from an order and judgment of the Circuit Court of Cole County affirming a decision of the Administrative Hearing Commission ("AHC").

Southeast is a licensed hospital located in Cape Girardeau, Missouri. The Missouri Department of Social Services [1] has authorized Southeast to provide Title XIX Medicaid services for which § 208.152, RSMo 1986,[2] provides benefit payments. Pursuant to § 197.300 *et seq.*, a health care provider wishing to expand or renovate its facility must obtain a Certificate of Need ("CON"). If a

---

1. The Department of Social Services and its integral Division of Medical Services will collectively be called the "Department" or "DMS" herein.

2. All statutory references, unless otherwise noted, are to RSMo 1986.

CON is issued, the provider may apply for a Medicaid *per diem* rate ("Medicaid rate") increase based upon the amount approved in the CON.

Before January 1, 1984, the Department granted Southeast an increase in its Medicaid rate for its pediatric special care unit, and included that increase in Southeast's 1983 rate. On February 21, 1984, Southeast requested an increase in its 1984 Medicaid rate for new and expanded services due to an extensive modernization program and purchase of a CT scanner. Southeast had a CON for both projects. The Department decided that the projects merited an increase in Southeast's Medicaid rate as of January 1, 1984. At that time, the Department's regulations required that, in determining the Medicaid rate to which an increase for a CON project must be added, the Medicaid rate must be the lowest yielded by one of three methods of calculation. The first method used Southeast's December 15, 1983 rate, increased by a certain percentage to allow for some degree of inflation. Increasing a rate in such manner is referred to as "trending forward." The third method used the third prior fiscal year's cost report trended forward.

The second method used the Title XVIII "Medicare rate" most recently filed with the Missouri Medical Services Section. The Department's regulation specified that the "Medicare rate" was an amount "determined by the servicing fiscal intermediary based on yearly Hospital Cost Reports." 13 CSR 70-15.010(2)(C). The "servicing fiscal intermediary" in this case was Blue Cross/Blue Shield. The manner in which Southeast's Medicare reimbursement was calculated had been changed some time before 1984, and therefore, Blue Cross/Blue Shield no longer determined a Medicare rate and no longer filed such a rate with the Department. As a result, there was no Medicare rate on file. Since there was no rate on file, the Department adopted a method of calculating such a rate itself. It used estimated Medicare payment computations, which were apparently based on Medicare cost reports, to come up with the rate. This calculation yielded the lowest Medicaid rate of the three methods

required to be used, $322.68. The Department then added $22.91 to that amount for the incremental costs of the CON project increase to arrive at a Medicaid rate for Southeast as of January 1, 1984 of $345.59.

On June 11, 1984, the Department sent Southeast a notice advising that its request for an increase in Medicaid rate had been reviewed and was granted at a new rate of $345.59. The notice stated that the Pediatric Special Care Unit costs had been previously granted and carried forward, and therefore resulted in no additional increase for that area. An attachment identified three alternative rates as calculated by the three methods required by the regulations in effect at that time. The one reflecting the approved rate was captioned "Most Current Medicare Per Diem On File (PRE DRG)." The notice further indicated that Southeast had 30 days in which to appeal the decision to the AHC. Southeast did not appeal.

The methodology employed by the Department to calculate the Medicare rate actually excluded Southeast's labor, delivery, pediatric and neonatal costs, and therefore, the portion of the notice indicating that those costs were carried forward and there was no entitlement to an additional increase for them was incorrect. Furthermore, on June 4, 1984, a week before the notice was sent, a Department employee, Kevin Syberg sent a memo to the Department's director, Jane Kruse. In that memo, under the heading "Analysis," Syberg stated:

> This is a rather complex issue. Not only must we decide if and how much of an increase is due for renovated services but also how to determine a Medicare rate under the DRG payment system (base year 1982).

The memo also acknowledged that Southeast's proposed rate of $408.03 and the method used in establishing it "may stand up to Federal assessment." The rate proposed by Southeast included labor, delivery and neonatal costs. Southeast was unaware of this memo until shortly before this case was heard before the AHC, when it obtained a copy by virtue of discovery procedures.

In addition, the Department did not inform Southeast that the rate captioned "Most Cur-

rent Medicare Per Diem on File (PRE DRG)" was not the amount "determined by the servicing fiscal intermediary based on yearly Hospital Cost Reports" as required by the Department's regulations, but rather was an amount calculated by the Department based on estimated Medicare payment computations. Southeast first learned of this in 1990 when it hired a new accountant with extensive experience in providing accounting services for Missouri Medicaid providers. The CPA concluded something was wrong with the rate and requested further information from the Department, which led to discovery of the manner in which the rate was calculated. As a result of the improperly computed rate, Southeast was denied a cumulative total of $1,049,870 in Medicaid payments between 1984 and 1990.

This background leads us to the origin of the instant appeal. In December, 1989, Southeast requested increases in its Medicaid rate for a change in case mix and for new and expanded services (CON projects). As a result of differences in calculating the proposed increases, much of the information regarding the 1984 rate calculation came to light. Thus, the case mix and CON increases of 1989 became relatively minor, and essentially uncontested, parts of the litigation. The primary focus of the case before the AHC, the trial court, and in this appeal is whether the Department correctly limited Southeast's 1984 Medicaid rate to which it added Southeast's 1984 requested CON project increase.

The AHC granted Southeast a CON project increase effective January 1, 1990 and a case mix increase as of May 1, 1990. However, it refused to increase Southeast's January 1, 1990 Medicaid rate (a prospective increase based on recalculation of the 1984 rate) before adding the CON and case mix increases. The AHC also ruled that it lacked subject matter jurisdiction under § 208.156.2 over Southeast's claim for lost Medicaid reimbursement between 1984 and 1990.

Southeast presents three points on appeal. First, it contends the trial court erred in affirming the AHC's denial of Southeast's request for a prospective rate increase from January 1, 1990 based on recalculation of the

1984 rate because such increase was authorized by the extraordinary circumstances adjustment provisions of 13 CSR 70–15.010(5)(E)2. Second, it asserts the trial court erred in affirming the AHC's determination that it lacked subject matter jurisdiction over Southeast's claim for retroactive Medicaid reimbursement for the period from 1984 through 1989. Finally, Southeast submits that the trial court erred in affirming the AHC's refusal to award retroactive reimbursement because the miscalculation of the 1984 rate deprived it of reimbursement for its reasonable costs as required by state and federal law.

■ Our review is of the decision of the AHC, not that of the circuit court. *City of Cabool v. Missouri State Bd. of Mediation,* 689 S.W.2d 51, 53 (Mo. banc 1985). Generally, we are limited to determining whether the decision of the AHC is supported by substantial competent evidence based on the record as a whole, as well as whether it is arbitrary, capricious, or unreasonable, or whether there was an abuse of discretion by the Commission. *Department of Social Services v. Our Lady of Mercy Home,* 803 S.W.2d 72, 75 (Mo.App.1990). AHC decisions based on interpretations of law are matters for the independent judgment of this court. *Id.* Likewise, we will draw our own conclusions of law from the AHC's findings. *Concerned Services, Inc. v. Department of Social Services,* 834 S.W.2d 908, 909 (Mo.App.1992). Finally, we will view the evidence in the light most favorable to the decision. *Shell Oil Co. v. Director of Revenue,* 732 S.W.2d 178, 180 (Mo. banc 1987), *appeal dismissed,* 485 U.S. 983, 108 S.Ct. 1283, 99 L.Ed.2d 494 (1988).

■ In its first point, Southeast argues that the AHC erred in refusing to grant it a prospective rate adjustment from January 1, 1990 based on recalculation of its 1984 rate. Southeast contends the improper rate computation in 1984 is an "extraordinary circumstance" permitting rate adjustment pursuant to 13 CSR 70–15.010(5)(E)2. This regulation provides, in pertinent part:

The prospectively determined individual hospital's reimbursement rate may be ad-

justed only under the following circumstances:

\* \* \* \* \* \*

2. When the hospital experiences extraordinary circumstances which may include, but are not limited to, an act of God, war or civil disturbance. Adjustments to reimbursement rates may be made in these circumstances.[3]

Southeast points to the fact that the Department erroneously applied the provisions of its own Inpatient Hospital Services Reimbursement Plan, of which the above regulation is a part, when it determined Southeast's 1984 rate, and that the Department misrepresented the "Most Current Medicare Per Diem on File" in its 1984 rate notice letter, as well as concealing its internal memorandum on the subject. Southeast submits that these constitute "extraordinary circumstances" under the foregoing regulation.

Southeast, as it did before the AHC, relies on *Department of Social Services v. Our Lady of Mercy Home*, 803 S.W.2d 72 (Mo. App.1990) for support. In *Our Lady*, this court interpreted regulatory language from the nursing home reimbursement plan which was similar to 13 CSR 70–15.010(5)(E)2.[4] The court, citing *Courtney v. Ocean Accident & Guar. Corp.*, 346 Mo. 703, 142 S.W.2d 858 (1940), approved the *Courtney* definition of "extraordinary": " 'beyond or out of the common order or rule; not of usual, customary, or regular kind.' " *Our Lady*, 803 S.W.2d at 75. After discussing *Monroe County Nursing Home Dist. v. Missouri Dep't of Social Services*, 778 S.W.2d 721 (Mo.App.1989), which also applied the definition of "extraordinary" found in *Courtney*, this court stated:

The definition of 'extraordinary and significant circumstances' provided in *Monroe County* applies. Medicaid reimbursement rate adjustment is proper when a nursing home demonstrates a circumstance 'be-

yond or out of the common order or rule; not of usual, customary, or regular kind.'
*Our Lady*, 803 S.W.2d at 76 (citation omitted). In *Our Lady*, the nursing home hired a new accounting firm, which determined that the previous accountant had prepared the home's base report using incorrect data and without proper cost allocation. This resulted in insufficient Medicaid reimbursement since the base report is used in calculating reimbursement rates and constituted a continuing detriment to the facility. The AHC had found the prior accountant to be harmful to the nursing home, and that the base report was "grossly inadequate." *Id.* Applying the *Monroe County* definition of "extraordinary and significant circumstances," the court found the prior accountant's error and the "grossly inadequate" base report to be significant and extraordinary circumstances within the meaning of the regulation such as to entitle it to a Medicaid rate adjustment. *Id.*

The AHC, in its conclusions of law, tried to distinguish *Our Lady*. It did so by asserting that the decision rested on the fact that the nursing home in *Our Lady* never had any remedy to correct the errors in its rate. According to the AHC, however, Southeast had a remedy from the errors made by the Department, that being appeal to the Commission under § 208.156.2 after the 1984 rate notification letter. We find the Commission's logic lacking. The *Our Lady* nursing home had just as much right to appeal its reimbursement rate as did Southeast. We perceive no real distinction between the circumstances in *Our Lady* and the instant appeal. Indeed, Southeast presents a stronger set of facts for application of the extraordinary circumstances language than did the nursing home in *Our Lady*. Here, the improper rate calculation was made by the Department, and Southeast was not informed of the meth-

---

3. This regulation was in effect at the time Southeast sought its rate adjustment. The regulation has since been amended and the "extraordinary circumstances" language now appears at 13 CSR 70–15.010(5)(F)2.C.

4. *Our Lady* concerned a regulation which provided, in pertinent part:

Adjustment to Rates. The prospectively determined reimbursement rate may be adjusted only under the following conditions:

\* \* \* \* \* \*

When the facility experiences estraordinary [sic] circumstances including an act of God, war, or civil disturbance, adjustments to reimbursement rates may be made in these circumstances[.]

odology. Rather, the rate notification letter intimated it was established in accordance with the regulations. In *Our Lady*, it was the nursing home's agent that committed the error, and the home and/or its agent had all necessary information to prepare the correct base report.

We therefore conclude the AHC erred in its determination that 13 CSR 70–15.010(5)(E)2 was inapplicable to the case at bar, and its consequent refusal to adjust Southeast's January 1, 1990 rate by removing the Medicare limitation from its January 1, 1984 rate and trending the uncapped rate forward to January 1, 1990.

■ In Points II and III, Southeast argues that the trial court erred in affirming the AHC's determination that it lacked subject matter jurisdiction over Southeast's claim for retroactive Medicaid reimbursement for the period from 1984 through 1989. In both points Southeast misconstrues the AHC's decision. It argues as if the AHC determined that it lacked subject matter jurisdiction because Southeast failed to appeal the 1984 rate decision, and tries to persuade us, with a variety of theories, that such ruling was erroneous. However, this was not the AHC's conclusion. Rather, the AHC ruled:

> Under Count II of each third amended complaint, Southeast requests reimbursement for the period January 1, 1984, to December 31, 1989. The amount sought is the difference between what the Department paid Southeast under its limited 1984 Medicaid rate, as trended forward, and what the Department would have paid if Southeast's 1984 rate had not been limited by the Medicare rate. *Southeast never submitted a claim to the Department for amounts due for these periods. We have no jurisdiction under § 208.156.2 for a claim which Southeast has not submitted to and had denied, or not ruled upon, by the Department. Therefore, we cannot consider the claim made under Count II.* (Citations omitted; emphasis added).

It is true that the AHC went on to say:

> To the extent that Southeast can be considered to have made such a claim for the 1984 fiscal year by its 1984 rate increase request for the CON projects, we no long-

er have jurisdiction over the Department's 1984 decision because the present appeals were filed more than 30 days after the June 11, 1984, notice letter was mailed or delivered.

The 1984 rate increase request for Southeast's CON projects cannot be considered a request for *retroactive reimbursement for the period January 1, 1984 to December 31, 1989,* which is what Southeast sought in Count II of each of its third amended complaints. Therefore, the alternative conclusion of the AHC just quoted is superfluous. The AHC's decision that it lacked subject matter jurisdiction over the claims for retroactive reimbursement was based on its determination that Southeast had not submitted a claim to the Department.

Section 208.156.2 provides:

> Any person authorized under section 208.153 to provide services for which benefit payments are authorized under section 208.152 whose claim for reimbursement for such services is denied or is not acted upon with reasonable promptness shall be entitled to a hearing before the administrative hearing commission pursuant to the provisions of chapter 621, RSMo.

In *Livingston Manor, Inc. v. Department of Social Services, Div. of Family Services,* 809 S.W.2d 153, 157 (Mo.App.1991), this court held:

> The statutory requirement found in § 208.156.2, that a facility's claim be denied by DSS prior to the Commission's acquiring jurisdiction, means that the Commission cannot acquire jurisdiction over a claim unless the facility has requested DSS to reimburse it for the particular cost for which it alleges entitlement.

In this case, which involves two consolidated appeals to the Commission, Southeast sent a letter to the Department requesting a CON project increase on December 27, 1989. The next day, December 28, 1989, Southeast requested a case mix adjustment increase. These are the claims initially made to the Department which are the subject of this appeal. Southeast did not seek reimbursement for any amounts alleged due for the period from January 1, 1984 to December 31,

1989 in either request. In fact, these initial claims did not contain a request for a prospective rate adjustment based on the erroneous calculation of the 1984 rate. However, on March 12, 1990, Southeast submitted to the Department a two-volume document which included, among other things, a section entitled "Correction of Error," in which it did request the prospective adjustment previously addressed, which was effectively denied by the Department in its rate notification letters to Southeast of June 7, 1990 and July 6, 1990. Nevertheless, even in this latter two-volume document, Southeast never made a claim to the Department for reimbursement of amounts it claims should have been paid during the period from January 1, 1984 to December 31, 1989.

Southeast first advanced the argument that it was entitled to retroactive reimbursement during the course of its appeal to the AHC of the Department's rate determinations of June 7, 1990 and July 6, 1990. Therefore, since Southeast failed to assert a claim with the Department, the AHC correctly held that it lacked subject matter jurisdiction over Southeast's request for retroactive reimbursement for the period January 1, 1984 to December 31, 1989. Consequently, Southeast's Points II and III are denied.

As noted previously, the AHC granted Southeast a CON project increase effective January 1, 1990, and a case mix increase as of May 1, 1990. However, both increases were calculated without adjusting Southeast's January 1, 1990 rate by redetermining its 1984 rate. Since we hold that Southeast is entitled to have its January 1, 1990 rate adjusted prospectively by removing the Medicare limitation from its January 1, 1984 rate and trending the uncapped rate forward to January 1, 1990, it appears from the record that this adjustment may change the amounts of the CON project and case mix increases. Therefore, on remand, it will be necessary for the trial court to direct the AHC to re-determine the amount of each of these increases.

To summarize, we affirm that part of the trial court's judgment affirming the AHC's decision that: (a) it lacked subject matter jurisdiction to consider Southeast's request

for reimbursement for the period from January 1, 1984 to December 31, 1989; (b) Southeast is entitled to a CON project increase effective January 1, 1990; and (c) Southeast is entitled to a case mix increase as of May 1, 1990. We reverse that part of the circuit court's judgment affirming the AHC's ruling denying Southeast a prospective rate adjustment of its January 1, 1990 rate pursuant to 13 CSR 70–15.010(5)(E)2, as well as the AHC's determination of the amounts of the CON project and case mix increases. Accordingly, we remand the case to the circuit court with directions that it remand the case to the Administrative Hearing Commission for a determination of Southeast's prospectively adjusted January 1, 1990 rate, and of the amounts of Southeast's CON project and case mix increases in light of the prospectively adjusted rate.

All concur.